United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 30, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-30185

INTERNATIONAL CHEMICAL WORKERS UNION, Local
683C of the United Food and Commercial Workers AFL-CIO,

Plaintiff – Appellant,

versus

COLUMBIAN CHEMICALS CO.,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This is an appeal from the district court's decision confirming and enforcing, in part, and remanding, in part, a labor arbitration award. Because the arbitration award in this case does not present circumstances that warrant vacating the award under Section 10 of the Federal Arbitration Act or Section 301 of the Labor Management Relations Act, we affirm the district court's decision to confirm and enforce the arbitration award. The district court also remanded the arbitration award to the Arbitrator for further clarification of whether the "make whole with back-pay" award should be offset by interim income. Because the Company failed to timely present the offsets issue to the

Arbitrator for review, we hold that the arbitration award was unambiguous and therefore, reverse the district court's order remanding the issue for clarification. For the reasons that follow, we affirm in part and reverse in part.

## Factual and Procedural Background

Troy Guidry ("Guidry"), a member of the International Chemical Workers Union Council, Local 638C of the United Food and Commercial Workers, AFL-CIO ("Union"), was employed by the International Chemicals Company ("Company") as a bead operator at the Company's North Bend Plant. Guidry worked at the Company for approximately two and one half years before he was discharged. On November 15, 2000, Guidry was caught sleeping during working hours by his supervisor, Timothy Tyler ("Tyler"). The next day Guidry was discharged by Charles Ardoin ("Ardoin"), the General Manager of the Plant. Guidry filed a grievance with the Company claiming that he was wrongly terminated. Consistent with the collective bargaining agreement ("Agreement" or "CBA") between the Company and Guidry's representative, the Union, the dispute was presented for arbitration.

The Union and the Company selected Arbitrator Barry J. Baroni to preside over the arbitration. The issue to be arbitrated was whether proper cause existed for Guidry's discharge and if not, "what is the appropriate remedy." On April 30, 2001, after a two-day hearing, the Arbitrator found that Guidry was sleeping on the job on November 14-15, 2000 but that the Company's discipline scheme was inappropriate for the nature of the offense. Thus, the Arbitrator concluded that "proper cause did not exist for the discharge." The Arbitrator fashioned the following remedy:

> It is, hereby, ordered that: The discharge be reduced to a 14-calendar day suspension and grievant be reinstated to his former position with the company, and be made

2

whole with back pay, benefits, and/or seniority. Grievant's records are to be expunged of all references to the discharge, and appropriate entry of the suspension be noted.

Grievant is, hereby, admonished that: He is now under formal progressive discipline and any further sleeping violations will result in further discipline, including discharge.

It is disputed whether the Company reinstated Guidry on May 9, 2001, nonetheless, he appeared at the plant on that date where he was again suspended for unrelated reasons. He was later terminated on May 16, 2001. Additionally, correspondence between the parties reveals that Guidry was paid for his employment and vacation between May 9 and his termination on May 16, 2002. On May 11, 2001 the Company requested information from Guidry about his interim employment and financial gains in order to calculate the back-pay award ordered by the Arbitrator. The core issue in the dispute over the back-pay award is whether the Company can legitimately request this information after the conclusion of the arbitration proceedings.

The Union and Guidry filed a Motion and Application to have the arbitration award enforced in part and vacated or modified in part in district court. Applying the deferential standard of review of an arbitration award espoused in Weber Aircraft Inc. v. General Warehousemen and Helpers Union Local 767, 253 F.3d 821, 823 (5th Cir. 2001), the district court confirmed the Arbitrator's award, but remanded the question of back-pay to the Arbitrator for clarification. The district court found that the Union's Motion to Strike the Affidavit of Ardoin had merit, but ruled that it was moot because the district court reached its conclusion to confirm the arbitration award without reference to the affidavit.

The Union appeals the district court's opinion arguing that under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA" or "Section 301") and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), the 14-day suspension and the finding that Guidry was sleeping on

3

November 14-15, 2000 should be vacated. The Union also contends that Guidry should be reinstated immediately with full back-pay. Moreover, the Union argues that the Company waived its affirmative defenses to the back-pay award, and therefore, the back-pay award is not ambiguous so as to require clarification.

## Discussion

I. Standard of Review

We review the district court's conclusions of law de novo and findings of fact for clear error. Hughes Training Inc. v. Cook, 254 F.3d 588, 592 (5th Cir. 2001). We apply a highly deferential standard when reviewing arbitration awards. "Judicial review of a labor-arbitration decision pursuant to [a CBA] is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Assn. v. Garvey, 532 U.S. 504, 509 (2001).


II. The Arbitration Proceedings

The Union contends that this arbitration, arising from the CBA must be evaluated under both Section 301 and the FAA. The district court appropriately relied only on the LMRA when it confirmed the arbitration award because this case involves arbitration under a CBA. The LMRA applies to CBAs and the FAA applies to individual arbitration agreements. It is undisputed that the LMRA is applicable to this case. The Union further contends that the Arbitrator operated outside of the scope of the CBA and in violation of the LMRA and the FAA. We disagree with both contentions.

4

Nevertheless, when reviewing a case involving a CBA and arising under Section 301, courts are not obligated to rely on the FAA but may rely on it for guidance in reviewing an arbitration award. See United Paperworks Int'l Union v. Misco, 484 U.S. 29, 41 n.9 (1987) (acknowledging that "federal courts have often looked to the [FAA] for guidance in labor arbitration cases," especially where section 301 of the LMRA applies); Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Local 812, Int'l Brotherhood of Teamsters, 242 F.3d 52, 55 (2d Cir. 2001) (explaining "that the body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone"); Am. Fed'n of Television and Radio Artists, AFL-CIO v. WJBK-TV, 164 F.3d 1004, 1009 (6th Cir. 1999) (same). Although historically, we have ruled on labor arbitration disputes involving CBAs without reference to the FAA, we have relied on the "liberal federal policy favoring arbitration agreements" reflected in the FAA. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); Waverly Mineral Products Co. v. United Steelworkers of America, 633 F.2d 682, 684 (5th Cir. 1980) (relying heavily on the "strong presumption favoring arbitrability"). Regardless, we need not decide this particular issue because the Union does not prevail under either the LMRA or the FAA.

Review of an arbitration award under both the LMRA and the FAA remains extraordinarily narrow. See Garvey, 532 U.S. at 509 (reviewing an arbitration award under the LMRA); Misco, Inc., 484 U.S. at 38 (reviewing an arbitration award under the FAA). Under the FAA:

[A] district court may vacate an award only if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10(a). An additional ground for vacating an arbitration award is that in making the award the arbitrator acted with manifest disregard for the law.

5

Harris, 286 F.3d at 792. Where there is a CBA which is governed by the LMRA, "courts have no business overruling [the Arbitrator] because their interpretation of the contract is different from [the arbitrator's]." Id. at 599. However, "an arbitrator is confined to interpretation of application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 593 U.S. 593, 597 (1960). "If we determine that the arbitrator has acted within the ambit of his authority as set by an arguable construction of the CBA, we have no authority to reconsider the merits of the arbitration award, even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA." Weber Aircraft, Inc., 253 F.2d at 824 (citing Paperworkers v. Misco, Inc., 484 U.S. 29, 38 (1987)).

The arbitration award in this case does not present any of the circumstances that would warrant vacating the award under Section 10 of the FAA or Section 301 of the LMRA. The Arbitrator did not act in "manifest disregard for the law" as contemplated in the FAA. Nor did the Arbitrator "dispense his own brand of industrial justice" as contemplated in the LMRA so as to overcome the deferential standard of review afforded arbitration awards. Assuming arguendo that both statutes apply, we now turn to a review of the arbitration proceedings.

Consistent with Article 18.3 of the CBA between the Union and the Company, the Arbitrator "shall not add to, subtract from, or modify the provisions of [the CBA]. The decision of the arbitrator shall be final." Guidry filed a grievance pursuant to Article 18 of the CBA contesting his discharge in November 2000 in violation of Article 2. Article 2 of the CBA provides that "the Union fully recognizes that the Company has the exclusive right and responsibility to manage the plant. These managerial functions include, but are not limited to the right to . . . discharge for proper cause." The Union contends that proper cause did not exist for Guidry's discharge in violation of Article 2 of the

6

CBA. Article 18.2 provides that "[i]f an employee, or group of employees, believe themselves to have been treated unfairly by reason of the application of any provisions of [the CBA], they may seek redress." Under the CBA, redress includes arbitration.

During the arbitration proceedings, both parties agreed that the Arbitrator would resolve the question: "Did proper cause exist for the discharge? If not, what is the appropriate remedy?" To do so, the Arbitrator was required to make several factual determinations. After distinguishing that "open view" or inadvertent "falling off" forms of sleeping are less egregious than the "making-a-bed" or "hidden away/closed door/ cloistered" types of on-the-job sleeping, the Arbitrator found that Guidry engaged in "open view" sleeping. Although the Arbitrator found that the Company proved by a preponderance of the evidence that Guidry was sleeping on the job, the Arbitrator determined that proper cause did not exist for the discharge. Instead, the Arbitrator determined that a more appropriate remedy was progressive discipline.

The Union contends that Guidry did not receive a full and fair hearing because the Arbitrator made erroneous credibility decisions; improperly excluded evidence; opted not to visit the plant site; and refused to issue a subpoena for prior written statements by the Company. As such, the Union requests that this Court vacate the arbitration award.[1] It is well settled that "courts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim." Garvey, 532 U.S. at 509 (quoting Misco, 484 U.S. at 37). We do not look over the shoulder

---

[1] We may not vacate the arbitration award under the LRMA, as requested by the Union, because even if this Court finds that "the arbitrator's award may be properly vacated, the appropriate remedy is to remand the case for further arbitration." Garvey, 532 U.S. at 512 (quoting Misco, 484 U.S. at 40-41).

of the Arbitrator in order to alter his credibility decisions, rather we only consider whether the Arbitrator provided a fair and full hearing consistent with the FAA and the LMRA.

Most of the Union's factual contentions are based on the Arbitrator's credibility decisions. Specifically, the Union complains that the Arbitrator gave more credence to the testimony of Tim Tyler ("Tyler") and Tommy Comeaux ("Comeaux") offered by the Company over that of Calvin Sanders, Sr. ("Sanders") and Leon Bordeaux ("Bordeaux") offered by the Union to find that Guidry was in fact asleep during working hours on November 15, 2002. Moreover, the Union suggests that the Arbitrator should have viewed the plant as the "best evidence" to test the credibility of the Company's testimony. The Arbitrator declined the Union's invitation to view the plant. Rather, the Arbitrator relied on several factors to test the witnesses' credibility and found that the evidence presented by the Company was more credible than the testimony provided by the Union. Specifically, the Arbitrator relied on the following factors: inconsistencies and denials in testimony; corroborating testimony; and self-interest present in the testimony. Although the Arbitrator found some inconsistencies between Tyler and Comeaux, there were "not enough to suggest that they were deliberately perjuring themselves to distort the truth," and there was corroborating evidence that Guidry was sleeping. The Arbitrator balanced this against Guidry's self-interest to protect his job through his "flat denial" that he was asleep and his "unproven allegation that Tyler had personal issues with him."

The Union further asserts that the Arbitrator failed to accept evidence of Tyler's racism or evidence related to a sleeping incident that occurred in May 2000. The Union asserts that the Arbitrator did not consider the testimony offered in Guidry's favor. The Arbitrator considered the Union's evidence of Tyler's racism and found it to be unsubstantiated. The Arbitrator found that

8

Guidry "was not a very credible witness and provided the arbitrator little or no reason to resolve credibility in his favor."

Regarding the May 20 sleeping incident, the Union asserts that the testimony presented by the Company regarding that incident was inconsistent. We disagree. The Arbitrator explained that the earlier sleeping incident had no bearing on the arbitration award for the November 15 incident:

> Although [Guidry] had been admonished about sleeping in the past, which the Union does not dispute, the arbitrator has no authority to consider any evidence concerning the alleged May 20, 2000 incident. ... that incident and any discipline attached to it was grieved and deliberately put on hold by mutual agreement of the parties. ... Thus, it would be inappropriate for this arbitrator to consider any other discipline from that May 20 incident in evaluating the propriety of discipline in this November 14-15 incident. ... The November 14-15 incident must be considered a 'first offense' discharge.

The Arbitrator used several factors to weigh the testimony of both parties. Neither the credibility determinations nor the decision to not consider the May 20 incident rise to the level of the Arbitrator applying his own "industrial brand of justice" under the LMRA, "a manifest disregard for the law" or inherently egregious acts under section 10 of the FAA.

Finally, the Union contends that without explanation the Arbitrator failed to grant its request for subpoenas for contemporaneous notes made by Tyler and Comeaux concerning the November incident. The Union complains that it received the notes approximately two days into the hearing. Although the Union concedes that "normally, an arbitrator does not always have to explain the reasons for his award," the Union asserts that the arbitrator's failure to do so violated the "adverse inference rule" of the Rules of Evidence and is sanctionable under section 10 of the FAA.[2] The Union complains that "[b]y refusing to address or consider this failure to produce evidence as evidence, the

---

[2]The Union makes this concession in its Reply Brief at footnote 17.

9

arbitrator prejudicially, arbitrarily, capriciously, and in manifest disregard for the law failed to hear pertinent and material evidence pursuant to Federal Rule of Evidence 612."

Although this Court recognizes that when a subpoena is ignored, a party can draw an adverse inference, see Burdine v. Johnson, 262 F.3d 336, 366 (5th Cir. 2001), in this case, the Union was never granted a subpoena. Arbitrators have broad discretion to make evidentiary decisions. See Amalgamated Meat Cutters & Butcher Workmen v. Neuhoff Bros., 481 F.2d 817 (5th Cir. 1973) (explaining that "the arbitrator has great flexibility and the courts should not review the legal adequacy of his evidentiary rulings"). Given that the Union received the notes from the Company, albeit late, we find that denying the Union's subpoena request did not rise to the level of the misconduct described in section 10(a) nor did it yield a fundamentally unfair hearing under the LMRA.

Finally, the Union contends that Guidry was not reinstated as required by the arbitration award. The Company responded by submitting to the district court an affidavit from Ardoin that Guidry was reinstated. Because the district court found that its motion to strike Ardoin's affidavit had merit but never rendered a ruling, the Union requests this Court to strike the affidavit. The district court did not rely on the affidavit to confirm the arbitration award, and therefore declined to make a ruling. The order from which the Union appeals only confirms and enforces the arbitration award and remands the back-pay issue to the Arbitrator. As there is no final judgment on the motion to strike, this Court does not have appellate jurisdiction to review this issue. See 28 U.S.C. § 1291.

III.    Remand of the Back-Pay Award to the Arbitrator

10

The parties dispute the Arbitrator's "make whole" back-pay award. In the Union's grievance, the Union requested its desired remedy: "Reinstate Troy Guidry and make him whole in salary, benefits, and seniority." As the parties could not agree on the issue to be arbitrated, the Arbitrator framed the issue consistent with the scope of his duties under the CBA. The issue to be arbitrated was: "Did proper cause exist for the discharge? If not, what is the appropriate remedy." After a two-day hearing, the Arbitrator awarded that Guidry be "made whole with back-pay, benefits, and/or seniority." The Union contends that the back-pay award is unambiguous and that Guidry is entitled to full back-pay. Thus, the Union maintains that remand for clarification of the back-pay award is unnecessary. The Company contends that the back-pay award should be calculated taking into account Guidry's interim earnings.

The back-pay award in this arbitration and the arguments advanced by the parties most closely mimic those considered in International Union of Operating Engineers, Local No. 841 v. Murphy Co., 82 F.3d 185 (7th Cir. 1996). In Murphy, our sister Circuit held that "[t]he rule is that an arbitrator's failure to impose a duty to mitigate or to exclude certain benefits from an arbitration award is to be understood to mean that none exists. We assume the award did not mention offsets because none was granted." Id. at 189 (internal quotations and citations ommitted). The Arbitrator in Murphy determined that the company did not have proper cause to discharge the Union employees and awarded that the employees "shall be reinstated to the employment and made whole." Id. at 187. During the appeal process, the company and the Union disputed the scope of the "made whole" award. Id. at 188. The Union filed a Motion to Enforce the Arbitration Award in federal district court. The company countered "that the award was ambiguous and should be remanded to the arbitrator for clarification" because the back-pay award should consider offsets of interim income.

11

Id. The district court disagreed with the company finding that the company waived the offsets issue. Id. The Seventh Circuit affirmed explaining that the Company waived this issue by failing to raise the issue of offsets before the Arbitrator during the hearings or in its post-hearing briefs and by failing to challenge the arbitration award within the 90-day limitation period pursuant to the FAA, 9 U.S.C. § 11(b). Id. at 188 ("The same result would obtain under the LMRA."). Because the remedy sought by the Union in Murphy was for the employees to be reinstated and be made whole with back wages and fringe benefits, the Seventh Circuit, "assume[d] that an arbitrator's failure to mention offsets in his ruling means that no offset was granted, not that the ruling was ambiguous." Id. at 189-90. We are persuaded by the reasoning of the Seventh Circuit. Similarly, we hold that the Arbitrator's silence on offsets in this case, without more, means that no offset was granted.

The Company argues that this case is more similar to the dispute presented in San Antonio Newspaper Guild Loc. 25 v. San Antonio Light Div., 481 F.2d 821 (5th Cir. 1973). Although we were persuaded with the company's argument in San Antonio Light Div. that the arbitration award was ambiguous with respect to whether the make whole with back-pay award should be offset by interim income, that case was presented to us in a significantly different procedural posture than the present case. Id. at 822. In San Antonio Light Div., the dispute over whether the back-pay award should take into account interim earnings was resolved through arbitration in favor of the company. The Arbitrator awarded, among other things, reinstatement and that "the Grievant shall be made whole for any loss in earnings." Id. at 822. Upon a dispute over the scope of the make whole with back-pay award, the company determined that the grievant was overcompensated by his severance and other interim earnings and therefore, that the grievant was obligated to repay the company. Id. at 822. The Union disagreed and the company filed a grievance against the Union seeking return of

12

the excess compensation. Id. at 823. The Arbitrator found in the company's favor, and the Union appealed. Id. Relying in part on "the Supreme Court's admonition that '[i]t is the arbitrator's construction which was bargained for,'" we affirmed the arbitration award. Id. at 825 (quoting United Steel Workers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 599 (1960)). In the present case, Article 18 of the CBA provides that "the decision of the arbitrator shall be final." Thus, we must give deference to what the parties bargained for, i.e., that the Arbitrator's decision is final.

In the present case, the Company did not raise the issue of offsets before the Arbitrator but raised it for the first time as an affirmative defense in its Answer to the Union's Motion to Enforce the Award filed in federal court. We agree with the Seventh Circuit that if we hold that the Arbitrator's award is ambiguous, we "only encourage employers to withhold evidence or comment on important issues, thereby undermining arbitration as a valuable tool for expeditiously and inexpensively resolving employer-employee disputes." Murphy, 82 F.3d at 190. Such is the situation in the present dispute. Because the Union requested a make whole back-pay remedy, the Company "should have known that the issue of damages was before the arbitrator and so should have addressed it" in a timely and complete fashion. Id. Accordingly, Guidry is entitled to the entire sum of back-pay in accordance with the arbitration award.[3]

## **Conclusion**

---

[3]In the hearing before the district court, the Company stated that this amount is approximately $35,000.

13

For the foregoing reasons, we AFFIRM the district court's confirmation of the arbitration award. Because the arbitration award was not ambiguous, we REVERSE the district court's order remanding for further clarification.