COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

DARRELL W. GARZA/PHELPS DODGE  §
REFINING CORP.,                                                      No. 08-07-00079-CV

                                                                §

          Appellant/Cross-Appellee,                Appeal from the

                                                                §

v.                                                              210th District Court

                                                                §

PHELPS DODGE REFINING                              of El Paso County, Texas
CORP./DARRELL W. GARZA,          §

                                                                    (TC#2006-2734)

          Appellee/Cross-Appellant.       §

## **O P I N I O N**

Appellant, Darrell W. Garza, appeals the trial court's judgment, which purported to confirm

an employment arbitration award by awarding Garza back wages, but granting the employer a

substantial offset against interim earnings.  Appellee/Cross-Appellant, Phelps Dodge Refining Corp.

("Phelps Dodge" or "the Company"), cross-appeals the trial court's award of any back wages against

it.  We reverse in part the judgment of the trial court and render judgment confirming the arbitration

award as written.

## I.  BACKGROUND

Garza was employed by Phelps Dodge as a maintenance mechanic at its refinery facility in

El Paso.  Among other duties, Garza performed maintenance and repair work on all of the pumps

at the refinery.  On June 21, 2005, Garza was assigned the task of replacing a water booster pump.

When he arrived at the work site, Garza noticed that there was no electrical power to the area where

the replacement pump was to be installed.  Nevertheless, he was required by the Company's "lock

out/tag out" policy to place a lock on the electrical switch.  Garza did not do so.  While Garza was

working on the pump, Richard Carroll and Rick Ontiveros arrived to conduct a safety inspection of

the area.  Carroll and Ontiveros discovered that Garza had not placed a lock on the electrical switch and reported his failure.

The "lock out/tag out" rule is an important safety rule that Phelps Dodge employees are trained to follow.  Employees understand that violation of the rule could result in termination of employment.  Garza had violated the rule once before, in April of 2005, and had been disciplined for it.  As a result of this second occasion, Garza was terminated on June 28, 2005.  Garza had worked for Phelps Dodge for approximately twenty-one years at the time of his termination.

At some point during his employment, Garza and Phelps Dodge had entered into a Mutual Recognition and Agreement Statement ("the Agreement"), in which Garza agreed to follow the Company's Open Door Policy and Problem Solving Procedure ("Problem Solving Procedure"), pursuant to which Garza and Phelps Dodge agreed to use the Problem Solving Procedure in lieu of filing a court action against the other.  As an apparent inducement to encourage Garza to sign the Agreement, Phelps Dodge voluntarily waived (at least in relevant part) its right to rely upon the employment-at-will doctrine, by agreeing that it would not fire Garza without "good cause."

The Problem Solving Procedure calls for an initial complaint to be made to Phelps Dodge internally.  Ultimately, however, if the issue is not resolved, the employee may resort to an appeals board or arbitration.  The Problem Solving Procedure provides that arbitration will be conducted pursuant to the Federal Arbitration Act ("FAA").[1]  It further provides that, except in cases in which an arbitrator has rendered a decision that changes a Company policy, procedure, rule, or regulation that is not violative of any law, any decision rendered by an arbitrator is final and binding on Garza and the Company.

---

[1] 9 U.S.C. §§ 1 *et seq.*

Garza, through an attorney, filed a lawsuit[2] asserting a claim for national origin discrimination by Phelps Dodge on June 1, 2006. Without his attorney's knowledge, Garza had simultaneously been pursuing reinstatement through the Problem Solving Procedure. As part of that process, an arbitration hearing was held on June 2, 2006.[3] After taking the testimony of two of Phelps Dodge's employees and Garza, Arbitrator Joseph F. Gentile[4] issued his Opinion and Award on July 20, 2006, and it was apparently received by the parties on or about July 28. Gentile concluded that Phelps Dodge did not establish good cause to terminate Garza's employment. The portion of his Opinion labeled "AWARD" provided, in its entirety:

> Based on this evidence record as a whole, it is the AWARD of the Arbitrator that "good cause" was not established to support the termination; however, "good cause" was established to support the issuance of a "Final Written Counseling" and in this case, a leave without pay for thirty (30) calendar days. The Appellant shall be reinstated in accord with this remedy which was found to be appropriate given this evidence record.

(Capitalization in original). On or about August 7, 2006, Phelps Dodge reinstated Garza to his previous position.

As part of the national origin lawsuit, Garza filed a motion to confirm the arbitration award on January 31, 2007. Among other things, Garza asserted that "the Court should enter Judgment awarding Plaintiff the amount indicated, his uncontested lost wages, less thirty (30) days unpaid

---

[2] Under the Texas Commission on Human Rights Act, TEX. LAB. CODE ANN. §§ 21.001 *et seq.*

[3] Plaintiff's counsel indicated at the February 2, 2007, hearing on Plaintiff's motion to confirm the arbitration award that she was not aware of the Mutual Recognition and Agreement Statement or of the fact that Plaintiff had participated in the arbitration hearing, until after it had occurred. At the arbitration hearing, Plaintiff was, however, assisted by Phelps Dodge's "Problem Solving Coordinator," who apparently served in a quasi-ombudsman capacity.

[4] Gentile is widely known in labor arbitration circles, having had numerous awards dealing with employer-union disputes published in reporters such as the Bureau of National Affairs' Labor Arbitration Reports. *See, e.g.*, Gentile's listing in the Table of Arbitrators referenced in FRANK ELKOURI & EDNA ASPER ELKOURI, HOW ARBITRATION WORKS 1460 (Alan Miles Ruben, ed., 6th ed., 2003). There was, however, no union involved in this proceeding.

leave and his cost of suit" (exhibit references omitted). On the same day, Garza filed an amended petition in which he reasserted his discrimination claim and also sought confirmation of the award. In response, Phelps Dodge filed its Motion To Dismiss and Application for Attorneys' Fees, in which it sought dismissal of the lawsuit for want of jurisdiction and an award of attorney's fees, pursuant to section 21.259 of the Texas Labor Code.

The trial court granted Garza's motion in part, holding that the arbitrator's award was confirmed. The trial court also granted the Company's motion in part, holding that the lawsuit was barred by res judicata, due to Garza's participation in the arbitration proceeding.[5] The trial court subsequently entered judgment awarding Garza back pay in the amount of $4,947.68, which the trial judge concluded represented Garza's net back pay after offset of his replacement earnings.[6] The trial court ordered that each party bear its own attorney's fees.

Garza appeals the trial court's judgment, arguing that the trial court erred in offsetting Garza's back pay award, since the arbitrator's award contained no reference to any offset. Phelps Dodge cross-appeals, arguing the trial court erred in awarding Garza any amount of money, since the award does not direct the payment of any back pay.[7]

---

[5] Garza has not appealed the dismissal of his national origin claim.

[6] The parties do not dispute that the amount of Garza's interim earnings was $56,206.17.

[7] In the alternative, however, Phelps Dodge argues that, if Garza is to be awarded any money, it is entitled to the full offset approved by the trial court, because, without such offset, Garza would receive a windfall.

## II. DISCUSSION

### A. Standard of Review

Under the FAA, we review the trial court's confirmation of an arbitration award *de novo*. *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407 (Tex. App.--Dallas 2007, no pet.) (citing *Gateway Techs., Inc. v. MCI Telecommc'ns Corp.*, 64 F.3d 993, 996 (5th Cir. 1995)). "[R]eview of an arbitration award, however, is usually 'extraordinarily narrow.'" *Tanox, Inc. v. Akin. Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex. App.--Houston [14th Dist.] 2003, pet. denied). We may not review the arbitrator's decision on the merits, even if it is alleged that the decision is based on factual error or that it misinterprets the parties' agreement. *Id.* Moreover, we indulge every reasonable inference to uphold the arbitration award. *Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 18 (Tex. App.--Fort Worth 2003, pet. denied); *Cooper v. Bushong*, 10 S.W.3d 20, 24 (Tex. App.--Austin 1999, pet. denied).

### B. Garza's Issue Regarding Offset of Interim Earnings

The sole issue raised by Garza on appeal is that the trial court erred in offsetting the amount of back pay awarded to him. Garza argues that the arbitration award unambiguously includes back pay, less the pay that would have been earned during the thirty-day suspension period. Garza argues that Phelps Dodge was not entitled to an offset, because the award did not specifically mention offset and because the Company did not raise the issue of offset during the arbitration proceeding. Phelps Dodge argues in response that the award does not mention back pay, that Garza did not request back pay or present evidence of back pay at the arbitration hearing, and that the trial court was without authority to fashion an award of back pay, because Garza did not move for vacation, modification,

or correction of the award within the ninety-day time limit.[8]

Having found that Phelps Dodge did not have "good cause" to terminate Garza, the arbitrator had broad authority to determine the appropriate remedy for him. The Company's Problem Solving Procedure provides:

> The Open Door Policy and the Problem Solving Procedure have been established to provide for a fair and impartial resolution of problems concerning your employment, including claims that the Company's policies and procedures have been violated, or that the Company has violated your rights under any state or federal law. . . . Almost all employment related problems are to be exclusively resolved by using either the Open Door Policy or the Problem Solving Procedure, except that the Problem Solving Procedure may not be used to resolve problems concerning industry illness or injury benefits, unemployment compensation benefits, performance reviews, or the establishment of wages, benefits, or employment terms, unless there is an issue as to whether the establishment of those items violates state or federal law.

The "fair and impartial resolution of problems" language is broad enough to encompass the issues of reinstatement and back pay. Consistent with that language, the issue submitted for arbitration was "[d]id the Company have good cause to discharge Darrell W. Garza on June 28, 2005? If the answer to the question is 'No,' what is the appropriate remedy?" The arbitrator's award provides that Garza was entitled to "a leave without pay for thirty (30) calendar days. The Appellant shall be reinstated in accord with this remedy which was found to be appropriate given this evidence record." Despite the issue posed, and the arbitrator's authority to craft such a remedy, the opinion and the award make no mention of "back pay." Although one might infer that an award of back pay, after the initial thirty-day leave, was implied in the arbitrator's Award, his opinion does not expressly address the issue.

Each party argues that the FAA's provisions concerning modification of an arbitration award

_____

[8] *See* 9 U.S.C. § 12.

6

bar the other from the relief it seeks. The FAA permits a court to modify or correct an arbitration award where an arbitrator has awarded upon a matter not submitted to him, unless it is a matter not affecting the merits of the decision upon the matter submitted. 9 U.S.C. § 11(b). Notice of a motion to vacate, modify, or correct an award must be served within three months after the award is filed or delivered. 9 U.S.C. § 12. It has been held that "[p]rocedural matters relating to the confirmation of arbitration awards in Texas courts are governed by Texas law even if the FAA supplies the substantive rules of decision." *McGrath v. FSI Holdings, Inc.*, 246 S.W.3d 796, 804 (Tex. App.-- Dallas 2008, pet. denied); *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) ("federal procedure does not apply in Texas courts, even when Texas courts apply the Federal Act"); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774 (Tex. 2006) (FAA only preempts state statutes to the extent that they are inconsistent with FAA); *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 260 n.3 (Tex. App.--Houston [1st Dist.] 2005, pet. denied), *cert. denied*, ___ U.S.____, 127 S. Ct. 297 (2006). In any case, because the FAA and the Texas General Arbitration Act ("TGAA")[9] are in agreement with regard to the time in which a motion for vacation, modification, or correction may be brought, the result under either statute would be the same in this case.

Garza brought what he titled a "motion to confirm," in which he argued that the trial court should enter judgment awarding him full back pay, less thirty days' unpaid suspension, and costs of suit. However, because back pay was not mentioned in the award, Garza's motion was for more than simple confirmation of the award. Garza's request necessarily required the trial court to attempt to divine the arbitrator's intent, when it was not spelled out in the award. It is not the role of the courts to determine an arbitrator's intent, when his intent is not apparent on the face of the award. *See Baker*

---

[9] TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.088(b), 171.091(b).

7

*Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.*, 164 S.W.3d 438, 447 (Tex. App.--Houston [14th Dist.] 2005, no pet.) (a court may modify or correct an arbitration award, but cannot speculate as to the intent of the arbitrators); *Barousse v. Paper Workers Int'l Union,* 265 F.3d 1059, 2001 WL 872844, at *7 (5th Cir. 2001) (not designated for publication) ("It is not the court's place to determine the intent of an arbitrator when the award fails to make the arbitrator's intent clear."). Clarification by the arbitrator may be appropriate in instances where the award is ambiguous. *See Barsness v. Scott*, 126 S.W.3d 232, 240 (Tex. App.--San Antonio 2003, pet. denied) ("An arbitrator may clarify an award when the original award is ambiguous and requires further explanation."); *American Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 260 (5th Cir. 2007) (remand for clarification is appropriate when an award is patently ambiguous). Under the TGAA, a party may request that an arbitrator modify or correct an award on certain grounds. TEX. CIV. PRAC. & REM. CODE ANN. § 171.054(a). However, a party must make an application for such correction or modification "not later than the 20th day after the date the award is delivered to the applicant." *Id.* at § 171.054(c).

In this case, neither party sought modification, correction, or clarification of the award from the arbitrator. Essentially, Garza sought modification of the award from the trial court. A party must apply for judicial modification of an arbitration award not later than the 90th day after delivery of the award. TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(b); 9 U.S.C. § 12. The arbitration decision was rendered on July 20, 2006, and received by the parties on or about July 28. Garza's first filing with the trial court following rendition of the arbitration award was on January 31, 2007. Phelps Dodge's first post-award filing was its Motion To Dismiss and Application for Attorneys' Fees, which was filed on February 2, 2007. Adjudication of the back pay and offset questions was, therefore, not sought by either party until well after the ninety-day deadline for modification or

8

correction of the award. Regardless of whether modification or correction of the award would have been appropriate in this case, the trial court was without authority to consider whether back pay should have been awarded and, if so, whether an offset should have been made. *See id.*

Garza relies on *International Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 172 L.R.R.M. (BNA) 2619 (5th Cir. 2003), for the propositions that he was awarded back pay and that Phelps was not entitled to an offset. In that case, the parties submitted to arbitration pursuant to a collective-bargaining agreement. *Id*. at 493. The arbitrator was asked to decide whether proper cause existed for the employee's discharge and, if not, to determine the appropriate remedy. *Id.* The arbitrator awarded reinstatement and provided that the employee "be made whole with back pay, benefits, and/or seniority." *Id*. The employee and his union filed a motion to have the award confirmed in part and vacated in part. The trial court confirmed the award, but remanded the issue of back pay to the arbitrator for clarification as to whether interim earnings should be considered in calculating back pay. *Id.* at 492-93.

The Fifth Circuit reversed the trial court's order remanding for clarification. *Id.* at 499. The court held that "the Arbitrator's silence on offsets in this case, without more, means that no offset was granted." *Id.* at 498. The court disagreed with the company's argument that the award was ambiguous. *Id.* at 498-99. The court reasoned that, since the union had requested back pay, the company should have known that the issue was before the arbitrator and should have addressed it in the arbitration proceeding. *Id.* at 499.

Garza's reliance is misplaced. In contrast to the facts in *Columbian Chemicals*, the award in this case not only does not mention offset, but does not mention back pay and does not provide that

Garza should, in any way, be "made whole."[10]  The Fifth Circuit concluded that an award's silence as to the issue of offset, when back pay was specifically mentioned in the award, along with the employer's failure to raise the issue of offset during the arbitration, meant that no offset was provided. Assuming, arguendo, the validity of the court's reasoning in that case, silence as to both back pay and offset would mean that neither had been awarded.  For the foregoing reasons, we overrule Garza's sole issue.

### C.  Phelps Dodge's Issue Regarding Back Pay Ordered by Trial Court

Phelps Dodge asserts two issues in its cross-appeal.  First, Phelps Dodge argues that the trial court erred in awarding any back pay to Garza, because Garza failed to raise the issue of back pay at the arbitration hearing and because the arbitration opinion and award do not address back pay. Second, Phelps Dodge argues that Garza failed to seek modification of the award within the three-month period required by the FAA.  Because we have already determined that the trial court was without authority to determine the issue of back pay, we need not address these issues.

### III.  CONCLUSION

We reverse the judgment of the trial court, to the extent that it awards Garza back pay.  This disposition necessarily moots his complaint about the court's order offsetting his back pay claim by

---

[10]  Compare Arbitrator Gentile's silence regarding either back pay and/or offsets in this Award with other arbitration decisions he has authored.  *See*, *e.g.*, *Lockheed Missiles & Space Co. v. International Ass'n of Machinists, Dist. Lodge 508*, 101 Lab. Arb. (BNA) 804, 808 (1993) (Gentile, Arb.) (grievant discharged April 15, 1993; in a decision issued November 25, 1993, Gentile approved a disciplinary suspension from April 15 to May 3, then ordered "Grievant shall be immediately reinstated with back pay and benefits from May 3, 1993 to the date of his reinstatement."); *Southern Cal. Rapid Transit Dist. v. United Transp. Union*, 101 Lab. Arb. (BNA) 10, 14 (1993) (Gentile, Arb.) (grievance sustained; "the Grievant shall be immediately reinstated with full seniority and back pay, less any money earned elsewhere.  Jurisdiction is retained only to resolve disputes as [to] the amount of back pay, if any.").

the amount of his interim earnings.  We therefore render judgment confirming the arbitration award as written.[11]

KENNETH R. CARR, Justice

August 21, 2008

Before McClure, and Carr, JJ., and Ables, Judge

---

[11] The members of this panel believe that it is entirely possible, if not probable, that, if a request for clarification had been filed with Arbitrator Gentile, he would have explained that his intent was to do precisely what the trial judge below concluded.  However, in the absence of such a request, it was neither the obligation nor the prerogative of the judiciary to "fill in the blanks" created by the arbitrator's silence.