HIGGINSON, Circuit Judge,
concurring in the judgment in part and dissenting in part:
A.
I concur in the conclusion that the district court had subject-matter jurisdiction under § 301(a) of the LMRA, 29 U.S.C. § 185, which empowers federal courts to decide [sjuits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce....
Preliminarily, I agree with the Third and Sixth Circuits — following the reasoning of Arbaugh v. Y & H Corp., 546 U.S. 500, 501, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)—that under § 301 the existence of a contract is a necessary element of a plaintiffs merits claim, not a threshold requirement which must be proven for subject-matter jurisdiction to exist, allowing parties in controversy access to federal court. See Pittsburgh Mack Sales & Serv., Inc. v. Int’l Union of Operating Eng’rs, Local Union No. 66, 580 F.3d 185, 190 (3d Cir.2009); Winnett v. Caterpillar, Inc., 553 F.3d 1000, 1007 (6th Cir.2009).
In Arbaugh, 546 U.S. at 503-04, 126 S.Ct. 1235, the Supreme Court held that the numerical qualification in Title VII’s definition of employer relates to the substantive adequacy of a claim and not to subject-matter jurisdiction. The Court explained: If the Legislature clearly states that a threshold limitation on a statute’s scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character. Id. at 515-16, 126 S.Ct. 1235 (internal citations omitted). The Court reasoned that the numerosity requirement appears in the definitions section of the statute and that the section does not speak in jurisdictional terms or refer in any way to the jurisdiction of the courts. Id. at 515, 126 S.Ct. 1235. The Court also took measure of the pragmatic consequences of designating an element as jurisdictional so that its existence confers or deprives federal courts of the power even to deal with the subject in dispute. See id. at 514-15, 126 S.Ct. 1235.
As the Third and Sixth Circuits persuasively have elaborated, several considerations compel the same conclusion as to the existence of a contract under § 301. See Pittsburgh Mack Sales, 580 F.3d at *419 189-90; Winnett, 553 F.3d at 1004-1007.[1] First, the text of § 301(a) does not explicitly state that it is a limitation on subject-matter jurisdiction. See 29 U.S.C. § 185(a). Indeed, the language at issue appears in the subsection entitled Venue, amount, and citizenship. Id. The only jurisdictional reference in this subsection describes a limit on personal jurisdiction and does not appear to modify the elements of the claim. See id. Second, there is a separate subsection explicitly entitled Jurisdiction, which sets forth exact limitations on personal jurisdiction. See id. at (c). Finally, all of the elements of the claim appear in subsection (a), yet the statute does not elaborate that some of the elements of the claim have subject-matter jurisdictional consequences whereas others do not. See Winnett, 553 F.3d at 1006. If the existence of a contract is a threshold jurisdictional requirement, then so too would be the existence of a violation, such that the district court would have to decide whether the contract actually had been violated before reaching the merits of the case. I am similarly reluctant to conclude that Congress intended to create a cause of action that has no non-jurisdictional elements. Winnett, 553 F.3d at 1006.
Finally, the practical oddities of designating the existence of a contract a threshold jurisdictional requirement are apparent here, as they were also in Arbaugh, 546 U.S. at 514-15, 126 S.Ct. 1235. It was Houston Refining that brought suit to vacate the arbitral award. As the plaintiff, Houston Refining invoked subject-matter jurisdiction under § 301 and 28 U.S.C. § 1331. Houston Refining now argues that the existence of a contract is a jurisdictional requirement (to obtain de novo review of arbitrability by the district court) yet simultaneously asserts that there was no CBA in effect at the time the Union filed its grievance. However, if the district court were to find that no CBA existed (as Houston Refining urges), then under this rationale it would have to dismiss the suit for lack of subject-matter jurisdiction and would be precluded from reviewing the arbitral award altogether.[2]
*420 The Third and Sixth Circuit decisions adhere to the Supreme Court’s instruction in Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int’l Union, 523 U.S. 653, 658, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998), that § 301 erects a gateway through which parties may pass into federal court, even as they do not require anticipatory proof of the elements of a § 301 claim in order to enter into federal court. Pittsburgh Mack Sales, 580 F.3d at 189-90; Winnett, 553 F.3d at 1006. Those Circuits only did not delve further into explication of what is both necessary and sufficient to support threshold subject-matter jurisdiction under § 301. Sufficient for this case, established case law settles that a suit by a plaintiff to vacate an arbitral decision finding that the plaintiff violated a CBA is cognizable under § 301, without requiring the plaintiff separately to allege in district court that either it or the defendant violated the relevant CBA. See Brown v. Witco Corp., 340 F.3d 209, 218 (5th Cir.2003) (When an arbitration decision arises from the terms of the collective bargaining agreement, judicial review of the arbitration award is authorized not by the FAA but by the terms of Section 301 of the Labor Management Relations Act.) (citing United Paperworkers Int’l Union v. Misco, 484 U.S. 29, 41 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286, (1987); Int’l Chem. Workers Union, Local 683C v. Columbian Chems. Co., 331 F.3d 491, 493-94 (5th Cir.2003)); see also, e.g., E.I. DuPont de Nemours and Co. v. Local 900 of the Int’l Chem. Workers Union, 968 F.2d 456, 458 (5th Cir.1992) (suit by employer to vacate arbi-tral award under § 301); N. New England Tel. Operations Co. LLC v. Local 2327, Int’l Bhd. of Elec. Workers, 735 F.3d 15, 20 (1st Cir.2013) (same); Akers Nat’l Roll Co. v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus, and Serv. Workers Int’l Union, 712 F.3d 155 (3d Cir.2013) (same); accord Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (citing Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 353 U.S. 448 (1957) (explaining that § 301 provides federal-court jurisdiction over controversies involving collective-bargaining agreements)); Caterpillar, 482 U.S. at 394, 107 S.Ct. 2425 (Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.) (internal quotation marks and citation omitted).
That approach is compatible with Tex-tron, which involved the different posture of a declaratory-judgment plaintiff that had not alleged the violation of a contract and therefore had not presented] a case or controversy giving [it] access to federal courts. Textron, 523 U.S. at 660, 118 S.Ct. *421 1626. The instruction of Textron is that a suit properly through the gateway into federal court under § 301 is one filed because a contract has been violated. Id. at 657, 118 S.Ct. 1626 (emphasis in original). Houston Refining’s suit in federal court indisputably was filed because the arbitrator concluded that Houston Refining had violated its CBA with the Union. Were Textron to establish the further special pleading rule that in every case a plaintiff must expressly allege that either it or the defendant violated a contract, I do not perceive that that formalistic rule would be met in this very case. No matter how its language is framed, Houston Refining’s complaint does not allege that either it or the Union violated the CBA. Instead, Houston Refining’s complaint states only that the Union filed a grievance alleging that Houston Refining violated the CBA and that the arbitrator exceeded his authority in agreeing with the Union. Whereas, as noted earlier, allegations in a counterclaim cannot establish federal-court jurisdiction, Houston Refining’s failure to expressly allege that either it or the Union violated the CBA is not determinative. That is because, again, a suit to vacate an arbitral award is cognizable under § 301. See, e.g., E.I. DuPont, 968 F.2d at 458.
Consider the instant facts. The parties made all of their arguments, about both the arbitrability of the grievance and the alleged violation of the CBA, to the arbitrator. The arbitrator decided that a CBA was in effect, analyzed the terms of the CBA, concluded that Houston Refining indeed violated those terms, and fashioned an award accordingly. Houston Refining then filed a complaint to vacate the arbi-tral decision that involved and arose from the terms of the disputed CBA, alleging that the arbitrator exceeded his authority in concluding that Houston Refining’s suspension of 401(k) contributions violated the CBA. This is a suit to vacate an arbitral award, filed because a contract (as declared by the arbitral award) was violated, which I would hold is sufficient to pass through the gateway of § 301 into federal court. See, e.g., E.I. DuPont, 968 F.2d at 458.
Because I agree that the district court had subject-matter jurisdiction to entertain this suit, the position all parties took heretofore, I concur in the outcome of Part III.A.
B.
I dissent, however, from the majority’s conclusion that the parties did not clearly and unmistakably agree to submit the question of arbitrability to the arbitrator. The parties dispute whether the Settlement Agreement, into which they entered pursuant to litigation in bankruptcy court, evinces a clear and unmistakable agreement to arbitrate arbitrability. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); ConocoPhillips v. Local 13-0555 United Steelworkers Int’l Union, 741 F.3d 627, 630 (5th Cir.2014). The context of the agreement is significant. The Union filed in bankruptcy court a motion to compel Houston Refining to arbitrate its grievance, which alleged that Houston Refining violated the terms of the parties’ CBA when it unilaterally suspended its 401(k) contributions. In response, Houston Refining raised all arguments against arbitra-bility, including that there was no CBA in effect at the time of the suspension, that the grievance was filed under a CBA that did not exist, and that, even if a CBA was in effect, it did not cover the grievance. The parties then entered into the Settlement Agreement, which provides:
1. The parties agree to proceed to arbitration with the grievances that are the subject of the Actions expeditiously and *422 in compliance with the arbitration procedures, including the time frames, in the applicable collective bargaining agreements ....
4. At arbitration, the parties shall reserve all rights to present any and all arguments and advance any and all defenses to them including, without limitation, arguments concerning whether or not an applicable collective bargaining agreement was in effect at the time that a particular grievance arose.
The Settlement Agreement is a concise, explicit agreement to arbitrate and defines the claims that will be subject to arbitration to include the subject of the bankruptcy proceedings and all relevant arguments and defenses, including but not limited to the existence of a CBA. The majority perceives ambiguity in the word reserve, but the Agreement states that the parties reserve the right to make those arguments at arbitration. The majority notes farther that Houston Refining raises other arbitra-bility arguments besides the lack of a CBA. But Houston Refining raised all of its arbitrability arguments in the bankruptcy proceedings, and the Agreement states that the parties reserve the right to argue at arbitration all arguments and defenses to that action, including but not limited to the existence of a CBA. There would have been no need to stipulate to that fact in advance if the parties did not intend the arbitrator to decide those questions.
In Rentr-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-70, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), the Supreme Court considered a delegation clause in an arbitration agreement, which submitted to arbitration certain threshold questions of ar-bitrability. The Court held that where such a clause delegates to the arbitrator a dispute relating to the arbitration agreement’s enforceability, validity, or scope, that is clear and unmistakable evidence that the parties agreed to arbitrate arbi-trability. See id.; see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir.2012) (concluding that parties agreed to arbitrate arbitrability where agreement expressly incorporated the AAA Rules, which state that [t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement) (internal quotation marks omitted); Allen v. Regions Bank, 389 Fed.Appx. 441, 446 (5th Cir.2010) (concluding that parties agreed to arbitrate arbitrability where agreement stated that [a]ny dispute regarding whether a particular controversy is subject to arbitration ... shall be decided by the arbitrator(s)). Agreeing with the district court, I would hold that the same is true with the Settlement Agreement here.
Houston Refining argues that the Settlement Agreement lays out matters of what will occur, not whether it will bind each side. In the above cases, however, the agreements did not state that the parties would be bound by the arbitrators’ decisions, only that the arbitrators would decide the questions. Those cases do not require magic words to establish that the parties agreed to arbitrate arbitrability. The facts of this case indicate that these two sophisticated parties agreed, after making their arguments relating to arbi-trability in bankruptcy court, to submit that dispute to arbitration. Therefore, I would hold that the parties clearly and unmistakably agreed to arbitrate arbitra-bility and thus that the district court properly applied deferential review to the arbitrator’s decision on arbitrability. See First Options, 514 U.S. at 943, 115 S.Ct. 1920; Beaird Indus., Inc. v. Local 2297, *423 Int’l Union, 404 F.3d 942, 944 (5th Cir.2005).
C.
I would hold further, however, that even under that deferential standard of review, the arbitrator exceeded his authority in concluding that the Union’s grievance was arbitrable. The grievance alleged that Houston Refining violated the CBA when it unilaterally suspended its matching contributions to the 401(k) Plan. Houston Refining argues that the CBA provides for arbitration of grievances regarding only wages, hours, or working conditions and that the company’s 401(k) contributions do not constitute wages within the meaning of the CBA.
Where an arbitration decision arises from the terms of a CBA, judicial review is narrowly limited. Courts should afford great deference to arbitral awards. Beaird, 404 F.3d at 944. As long as the arbitrator’s decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside. Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. and Energy Workers Int’l Union, Local 1-1201, 480 F.3d 760, 764-65 (5th Cir.2007) (internal quotation marks and citation omitted). However, [i]t is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions. Beaird, 404 F.3d at 946. Thus, [although we accord an arbitrator’s decision considerable deference regarding the merits of the controversy, the CBA circumscribes his jurisdiction. Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, So. Council of Indus. Workers, Local Union No. 2713, 103 F.3d 449, 452 (5th Cir.1997). This is the appropriate deferential standard of review afforded to a question of arbitrability that the parties agreed to submit to the arbitrator. See First Options, 514 U.S. at 943, 115 S.Ct. 1920 (Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court’s standard for reviewing the arbitrator’s decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.).[3]
Under our circuit’s and other circuits’ case law, I would hold that the term wages in this CBA is not broad enough to encompass Houston Refining’s suspension of 401(k) contributions.[4] Article 30 of the *424 CBA provides that [a] grievance is defined to be any difference regarding wages, hours, or working conditions between the parties or between the Company and an employee covered by this Agreement (emphasis added). Article 14, entitled Wage Rates and Pay, nowhere references the 401(k) Plan. Appendix C, entitled Wage Rates, similarly refers only to base rates of pay. Articles 14 and 30, which describe wages and the grievance procedure, are separate from and precede Article 40, which contains the provision that is the subject of the instant grievance:
During the term of this Agreement, the Company will provide advance notice of proposed changes to the benefit plans covered by the Agreement.... A reasonable time period will be provided for the Union to elect inclusion in or exclusion from the amended benefits plan. If the Union elects exclusion, represented employees shall continue participation in the existing, unchanged benefits plan for the term of the Collective Bargaining Agreement.
Significantly, whereas Article 40 goes on to explicitly apply the grievance procedure to the Sickness and Accident Disability Plan, it does not do so for the other listed benefits plans, including the 401(k) Plan. Accordingly, the 401(k) provision at issue contains no mention of grievance or arbitration.
Houston Refining has a separate 401(k) Plan with its own provisions for review of benefits. The 401(k) Plan distinguishes company contributions from compensation, including wages. It expressly provides that
the Benefits Administrative Committee has exclusive responsibility for the general Plan administration, according to the Plan terms and provisions, and shall have all discretion and powers necessary to accomplish its purposes, including, without limit, the right, power, authority and duty ... to construe and interpret all Plan terms, provisions, conditions and limits and the Benefits Administrative Committee’s construction and interpretation shall be final and conclusive on all persons or entities ... to determine all controversies relating to Plan administration ... to make a determination on any person’s right to a benefit and to afford any person dissatisfied with that determination the right to a full and fair review.
It further provides that it may be amended at any time, that the Plan Sponsor reserves the right to terminate it at any time, and that it does not impose an obligation to pay benefits other than any potential ERISA liability.
In Local Union No. 4-449, Oil, Chem. and Atomic Workers Union v. Amoco Chem. Corp., 589 F.2d 162, 163 (5th Cir.1979) (per curiam), the union sought to compel arbitration under a CBA of the company’s denial of sick-pay benefits. The CBA provided: Benefits with respect to sickness and disability shall be payable in *425 accordance with the Company’s Sickness and Disability Benefits Plan as presently in effect except that an employee will be paid holiday pay in place of sick leave pay for a holiday falling on a normally scheduled day of work, but which normally would not have been worked by the employee. Id. The Benefits Plan stated: The decision of the Board of Directors of the Company on any matter concerning the administration of this plan as a whole or as applied to any specific case Shall be final and the Board reserves the right to interpret, apply, amend or revoke this Plan at any time. Id. We concluded that the CBA and the benefits plan together clearly excluded arbitration for grievances concerning sick-pay benefits. Id. at 164. I would apply the same logic and analysis here.
Other circuits have come to the same conclusion on similar facts. See United Steelworkers of Am. v. Rohm and Haas Co., 522 F.3d 324, 326-27 (3d Cir.2008) (concluding that dispute over ERISA benefits was not arbitrable where CBA grievance clause covered only wages, hours, and working conditions and CBA referenced the disability-benefits plan and vice versa but no other overlap existed); Bridgestone/Firestone, Inc. v. Local Union No. 998, United Rubber, Cork, Linoleum, and Plastic Workers of Am., 4 F.3d 918, 922-23 (10th Cir.1993) (concluding that dispute over employee-suggestion system was not arbitrable where CBA grievance clause covered only interpretation or application of CBA, suggestion system had its own agreement and review process, and CBA did not reference suggestion system); Printing Specialties and Paper Prods. Union Local 680, Graphic Commc’n Int’l Union v. Nabisco Brands, Inc., 833 F.2d 102, 103-05 (7th Cir.1987) (concluding that dispute over pension benefits was not arbi-trable where grievance clause covered only wages, hours, and working conditions, pension plan stated that pension committee would be responsible for its administration, CBA contained only one reference to plan, and bargaining history suggested purpose to exclude pension claims from arbitration).[5] In all of these cases, the disputes concerned alleged violations of rights to benefits created in the CBAs, yet the courts still concluded that the disputes were not arbitrable, hence the cases are not distinguishable on the ground that the disputes concerned only employee eligibility under the separate benefits plans. See, e.g., Printing Specialties, 833 F.2d at 103; Amoco, 589 F.2d at 163.
Here, the CBA grievance clause covers only wages, hours, or working conditions. Nowhere does the CBA’s discussion of wages mention 401(E) benefits. The CBA references Houston Refining’s duty to notice proposed changes to the 401(k) Plan, but whereas it explicitly applies the grievance procedure to another listed benefits plan, it does not do so for the 401 (k) Plan. The 401(k) Plan provides for independent administration of benefits and resolution of disputes by a separate committee. Houston Refining made unilateral changes to the 401(K) Plan several times prior to this suspension. Thus, there appears to be no ambiguity as to the intent of the [CBA] to exclude grievances dealing with [401(k) ] *426 benefits from arbitration, Amoco, 589 F.2d at 163-64, and I would hold that the arbitrator exceeded] his contractual mandate by acting contrary to express contractual provisions. Beaird, 404 F.3d at 946.
For the foregoing reasons, I would reverse and remand with instructions to vacate the arbitral award. I respectfully concur in the judgment in part and dissent in part.

. The Eighth Circuit has maintained course after Arbaugh, continuing to conclude that the existence of a contract is threshold requirement for subject-matter jurisdiction under § 301. See ABF Freight System, Inc. v. Int’l Bhd. of Teamsters, 645 F.3d 954, 961-63 (8th Cir.2011) (agreeing with defendants' argument that the existence (or violation) of a collective-bargaining agreement is a jurisdictional requirement under section 301(a)). For the reasons articulated above by the Third and Sixth Circuits, and above all the Supreme Court's unanimous and clarifying decision in Arbaugh, I disagree. Furthermore, I would add that our court thirty-four years ago in Alexander v. Int’l Union of Operating Eng’rs, 624 F.2d 1235, 1238 (5th Cir.1980), did not elaborate reasoning determinative of the issue before us when we made the following statement: As the language in section 301 makes clear, jurisdiction depends on whether there is a contract between an employer and a labor organization or between two labor organizations. That observation was not essential to our court's holding in Alexander, nor is it instructively precise in light of Arbaugh. The issue in Alexander was whether the union's international constitution constituted a contract within the meaning of § 301, id., whereas here there is no question that a CBA is a contract within the meaning of § 301.

. Allegations in a counterclaim do not suffice to establish federal-court jurisdiction where the basis for federal jurisdiction does not appear on the face of the plaintiff's complaint. See Caterpillar Inc. v. Williams, 482 U.S. 386, 392-98, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (explaining that the well-pleaded complaint rule applies to suits under § 301 and that the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule ...); Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric., 523 U.S. 653, 659, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) (reiterating that the well-pleaded complaint rule bars invoking § 1331 *420 jurisdiction by anticipating a federal defense in a suit asserting a nonfederal claim) (citing Rivet v. Regions Bank of La., 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)). Hence, the LMRA cases discuss only the adequacy of a plaintiff's complaint. See Textron, 523 U.S. at 661, 118 S.Ct. 1626 (Because the [plaintiff's] complaint alleges no violation of the collective-bargaining agreement ...); Alexander, 624 F.2d at 1238 (Plaintiff employees sough to invoke the district court’s jurisdiction ... Plaintiffs contended that violation by the respective unions ...). None indicates that the allegations in a counterclaim can establish jurisdiction under § 301. Cf. Textron, 523 U.S. at 658-60, 118 S.Ct. 1626 (rejecting Union’s argument that its declaratory-judgment action should proceed because it was a defense to what it anticipated would be employer's claim that Union violated the CBA). Houston Refining properly invoked subject-matter jurisdiction under both § 301 and 28 U.S.C. § 1331; § 301 provides the federal question, and the well-pleaded complaint rule applies. See Caterpillar, 482 U.S. at 398, 107 S.Ct. 2425.

. The question of whether the parties agreed to arbitrate arbitrability determines what level of deference the court affords to the arbitrator's decision. See First Options, 514 U.S. at 943, 115 S.Ct. 1920. Accordingly, the majority’s challenge that my approach conducts a de novo or independent review of the CBA is incorrect; rather, because I conclude that the parties clearly agreed to submit the entirety of this dispute, including the question of whether this dispute falls within the terms of the CBA, to the arbitrator, the well-established deferential standard of review applies to the arbitrator’s determination of that question. See Beaird, 404 F.3d at 944. The Second Circuit’s decision in Schneider v. Kingdom of Thailand, 688 F.3d 68, 72 (2d Cir.2012), is consistent with this approach, as there the district court erred because it deferred to the arbitrator’s arbitrability determination without first finding clear and unmistakable evidence of the parties' intent to submit that question arbitration. The Second Circuit nonetheless reiterated the rule that a party resisting confirmation of an arbitration award is entitled to an independent review of a question of arbitrability unless there is clear and unmistakable evidence that the parties agreed to arbitrate that question. Id. at 71 (emphasis added).

. That the relevant cases review the scope of the CBAs at issue de novo is not determinative here because that standard also is deferential: Where the contract contains an arbitration clause, there is a presumption of arbitrability *424 in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. AT & T Techs., Inc. v. Commcn’s Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The cases nonetheless conclude, however, that there is no ambiguity as to the intent of the CBAs to exclude the grievances from arbitration. See, e.g., Local Union No. 4-449, Oil, Chem. and Atomic Workers Union v. Amoco Chem. Corp., 589 F.2d 162, 163 (5th Cir.1979) (per curiam). That conclusion supports equally a finding that here the arbitrator acted contrary to express contractual provisions in finding this dispute to be arbitrable. See Beaird, 404 F.3d at 946. Finally, because this issue turns on a matter of law which requires the interpretation of the CBA, see Amoco, 589 F.2d. at 163, further factual development is unnecessary.

. The cases in which courts have concluded that similar disputes are arbitrable are consistent as well because they involved contrastingly broad arbitration clauses. See Karl Schmidt Unisia, Inc. v. UAW Local 2357, 628 F.3d 909, 914-16 (7th Cir.2010) (concluding that dispute over employee-incentive program was arbitrable where CBA grievance clause covered any violation of this agreement); E.I. DuPont De Nemours & Co. v. Ampthill Rayon Workers, Inc., 290 Fed.Appx. 607, 610-12 (4th Cir.2008) (unpublished) (concluding that dispute over ERISA benefits plan was arbitrable where CBA grievance clause covered any question as to the interpretation of the [CBA] or as to any alleged violation of the [CBA]).