# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2010

No. 09-60705

Lyle W. Cayce
Clerk

KENNETH ALLEN; MINNIE ALLEN,

Plaintiffs - Appellees

v.

REGIONS BANK, a successor of First American National Bank,
operating as Deposit Guaranty National Bank; UNION SECURITY LIFE
INSURANCE CO, a foreign corporation,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:09-CV-70

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A bank and insurance company appeal a district court's decision to deny
their motions to compel arbitration. They argue the arbitrator and not the
district court was to determine the gateway issue of arbitrability. In light of
United States Supreme Court authority handed down after the district court's
judgment, we REVERSE and REMAND.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-60705

## I. FACTS

Kenneth Allen and Minnie Allen obtained a home equity loan from First American National Bank in October 1999. The loan was secured by a deed of trust on the Allen's property in Jayess, Mississippi. The bank withheld funds from the loan to purchase credit life and disability insurance.

AmSouth Bank became the successor to First American in December 1999. In 2004, Mr. Allen contacted AmSouth to make a claim under the disability insurance. AmSouth denied that there was any disability insurance policy. In 2008, Mr. Allen was diagnosed with cancer, and he made a new claim. By then, Regions Bank was AmSouth's successor. Regions and Union Security Life Insurance Company now were the ones to deny there was an insurance policy.

In April 2009, the Allens filed suit in the United States District Court for the Southern District of Mississippi. Regions and Union Security were named as defendants. The Allens alleged breach of trust, fraud and misrepresentation, breach of the insurance agreement, and bad faith.

Regions's response was to file a motion to compel arbitration. There was no arbitration provision in the agreements executed for the 1999 home equity loan. In 2001, though, the Allens opened what AmSouth called a Demand Deposit Account. At that time, they signed a document binding them to the terms of the AmSouth Customer Agreement. The agreement contained a clause requiring arbitration of any dispute between them. Regions became the legal successor to AmSouth in November 2006. A transition for a changeover of accounts proceeded in subsequent months. In October 2007, Regions mailed the Allens an explanation of the effects of the merger. A lengthy Consumer Disclosure Booklet was included, stating that it constituted the new agreement covering "deposit accounts." We will refer to the booklet as the "Regions Agreement." After a bold-font reference to "Binding Arbitration," the booklet said the arbitration provision shall "also apply to any account, contract, loan,

No. 09-60705

transaction, business, contact, interaction or relationship you may have" with the bank.  The manner in which customers would be bound by the new terms was set out, and it is not contested that the Allens accepted the terms.

This is part of the arbitration provision:

> ARBITRATION AND WAIVER OF JURY TRIAL. Except as expressly provided below, you and we agree that either party may elect to resolve by BINDING ARBITRATION any controversy, claim, counterclaim, dispute, or disagreement between you and us, whether arising before or after the effective date of this Agreement (any "Claim"). This includes, but is not limited to, any controversy, claim, counterclaim, dispute or disagreement arising out of, in connection with or relating to any one or more of the following: (1) the interpretation, execution, administration, amendment or modification of the Agreement; (2) any account; (3) any charge or cost incurred pursuant to the Agreement; (4) the collection of any amounts due under the Agreement or any account; (5) any alleged contract or tort arising out of or relating in any way to the Agreement, any account, any transaction, any advertisement or solicitation, or your business interaction, or relationship with us; (6) any breach of any provision of the Agreement; (7) any statements or representations made to you with respect to the Agreement, any account, any transaction, any advertisement or solicitation, or your business, interaction, or relationship with us; or (8) any of the foregoing arising out of, in connection with or relating to any agreement which relates to the Agreement, any account, any transaction or your business, interaction or relationship with us.

The provision also stated that a "dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire Agreement, shall be decided by the arbitrator(s)."

The motion to compel arbitration was denied by the district court.  The court held that the Regions Agreement did not unambiguously modify the loan agreement.  There was an enforceable arbitration clause as to deposit accounts, but that clause did not apply to the loan agreement.   This appeal followed.

3

No. 09-60705

## II. DISCUSSION

### A. Arbitration of Arbitrability Dispute

The parties agree that the Federal Arbitration Act ("FAA") applies. 9 U.S.C. §§ 1-16. Section 4 of the FAA allows a party to petition for an order compelling arbitration when there has been a "failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." *Id.* § 4. A court shall order arbitration "in accordance with the terms of the agreement" provided it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . ." *Id.* The district court denied Regions's motion to compel arbitration because the "making of the agreement for arbitration" was in issue. There is, though, no dispute that an arbitration agreement between the parties exists. Its reach is the question.

In this appeal, we are not deciding whether this dispute is covered by the arbitration clause. Instead, we are deciding whether the district court properly held that it should decide that issue. The general rule is that the issue of whether there is an agreement to arbitrate a particular dispute is for a court to decide. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). However, the issue of arbitrability is for an arbitrator when the evidence clearly demonstrates that was the parties' agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).

The district court, relying on *First Options*, said that the issue of arbitrability must have been clearly and unmistakably given to the arbitrator. The court then cited caselaw that when the issue is whether an arbitration agreement even exists, the courts must decide. *E.g., Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003). In that precedent, the party seeking to avoid arbitration alleged the contract with the arbitration provision never came into effect because all the necessary signatures were never acquired.

4

No. 09-60705

*Id.* at 212. Contract formation is not involved here, though, as the Allens agree there is a valid contract with the arbitration provision.

The district court also employed the analysis of a Mississippi Supreme Court decision addressing an AmSouth agreement with its customers. *See AmSouth Bank v. Quimby*, 963 So. 2d 1145 (Miss. 2007). The *Quimby* court held that amendments to the agreements the customers initially entered with the bank did not have sufficiently clear language to apply retroactively. *Id.* at 1150. Only the later agreements had the *First Options* clause, which required arbitration of issues of arbitrability. *Id.* at 1154. The state court also found that the applicability of the arbitration provision to "accounts" with the bank did not with sufficient clarity reach the line of credit that Quimby had with the bank and for which he had a credit disability policy. *Id.* at 1151. The *Quimby* court upheld the trial court's denial of a motion to compel arbitration. *Id.* at 1156.

The district court acknowledged that the Regions Agreement used broad language to state that the arbitration provisions applied to all relations with its customers. The court also found, though, that the cover letter which referred to "deposit accounts" created an implication that the lengthy enclosure only applied to accounts. From that language, ambiguity fatal to Regions resulted.

To the extent the validity of the agreement is an issue, we note the Allens do not allege arbitration to be invalid due to unconscionability or other such defect. There are two kinds of "validity" disputes that arise under of the FAA:

> "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."

*Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).

5

The importance of these categories is due to Section 2 of the FAA. Section 2 allows arbitration if the "written provision" that mandates the arbitration is not subject to revocation under the usual grounds in law and equity. *Id.* (citing 9 U.S.C. § 2). If it is another provision of the contract, or the contract as a whole, that is contested, the court may still require arbitration of that dispute because the arbitration provision itself is not challenged. *Id.* Under the severability rule, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye*, 546 U.S. at 449.

The first type of challenge, the validity of the arbitration provision being asserted, might raise fraud in the inducement. *Id.* at 444-45 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). The Allens do not argue that the arbitration provision is invalid for such reasons, only that it is inapplicable for interpretative reasons arising largely under state law.

The second type of validity challenge, which here would be to the loan agreement or another contract between the Allens and Regions of which arbitration is just a part, has not been made. Regardless, a challenge of this second type would not avoid arbitration. *See Rent-A-Center*, 130 S. Ct. at 2778.

*Rent-A-Center* added to these principles by resolving a case in which the entire agreement was one simply for arbitration. The arbitration clause was not contained in an employment or loan or other agreement. The Court held that in such a circumstance, the type of challenge that a court could hear must be to the validity of the specific provision in the arbitration agreement. *Id.* at 2779. In *Rent-A-Center*, the specific provision being contested was the one that clearly and unmistakably gave to the arbitrator the right to resolve issues of arbitrability. *Id.* The plaintiff challenged the entire arbitration agreement as unconscionable and not the delegation provision, the latter being the "written provision" compelling arbitration. *Id.* Consequently, because the delegation

provision was not challenged as unconscionable, the possible invalidity of the entire contract was for the arbitrator to decide. *Id.* at 2780-81.

Turning to our case, the Allens have always argued that the manner in which the different agreements were written did not lead clearly to the application of the arbitration provision to the consumer loan dispute. That is not a challenge to the validity of the agreement but to its applicability.

The district court decided that the arbitration agreement that arose from the transactions involving the Allens and their succession of banks did not "validly" reach the dispute over disability insurance that was to be acquired at the time of a 1999 home equity loan. It was found to be of limited reach in light of *Quimby*. It is certainly common use of language to say that arbitration does not "validly" apply to the dispute, but the agreement itself, as far as it reached, was never found to be invalid nor was it even challenged as being invalid.

When we asked for submissions from each party after *Rent-A-Center* was released, the Allens alleged that "they never concluded an arbitration agreement with Regions Bank." This appears to be an attempt to claim this dispute fits within the category that the Supreme Court has said is for the courts, that the agreement was not "concluded" because the contract was never signed, or the signatory did not have authority to bind or had insufficient mental capacity. *Rent-A-Center*, 130 S. Ct. at 2778 n.2 (citing *Buckeye*, 546 U.S. at 444 n.1). An examination of the arguments in the district court and in the appellate briefing reveal that there has never been an issue made of whether the contract was "concluded." There also has not been an argument that the arbitration agreement itself or the delegation language was invalid, that it was unconscionable, or otherwise unenforceable. It is too late to raise such issues now. *Id.* at 2781 (plaintiff's new argument of unconscionability was "too late" and was not considered).

All of this analysis about the nature of the claim of invalidity should not cause us to lose sight of an important caveat. The parties must have clearly intended for issues of arbitrability to be arbitrated. *Id.* at 2778 n.1. Otherwise, the scope of the arbitration agreement is for the court to decide just as the district court did here. *First Options*, 514 U.S. at 944-45. As quoted already, the Regions Agreement was clear: "Any dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)." The Allens accepted this agreement by continuing to use their deposit accounts with Regions and by signing signature cards. This was sufficient clarity to demand arbitration of arbitrability.

Any ambiguities regarding the scope of an arbitration clause are resolved in favor of coverage. *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989). The arbitration agreement unmistakably commands that disputes as to its applicability are for the arbitrator.

We conclude that the motion to compel arbitration should have been granted. The question the district court answered is for the arbitrator.

*B. Arbitration of Dispute Involving Union Security, a Non-signatory*

A separate issue is raised of whether the insurance company that allegedly improperly refused to pay the claim may also compel arbitration. That company, Union Security, was a non-signatory to the Regions Agreement.

The district court did not need to address the separate issues involving Union Security. Once the district court held that Regions could not compel arbitration, it followed that Union Security could not either.

Arguments that were presented but not resolved in district court should be considered first by that court. *KSLA-TV, Inc. v. Radio Corp. of Am.*, 693 F.2d 544, 546 (5th Cir. 1982). We return this question to the district court.

No. 09-60705

*C. Stay of Proceedings*

Union Security argues that this proceeding should be stayed regardless of whether the Allens are compelled to arbitrate their claims against them. The Allens do not address the assertion.

Section 3 of the FAA provides for a stay of litigation when the issues are "referable to arbitration under an agreement in writing . . . ." 9 U.S.C. § 3. The court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* A set of considerations exist for making the decision. *See Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). We leave it to the district court to decide the question of a stay.

We REVERSE and REMAND for proceedings consistent with this opinion.