**Ellen S. STAPLES, Individually and Ellen S. Staples, Administrator of the Estate of Rodney Staples, Deceased, Plaintiffs**

**v.**

**REGIONS BANK d/b/a Regions Bank, Inc., LotSolutions, Inc., Dr. Mark Shepherd, Individually, Endocrinology Consultants, PLLC, John Does, Individuals 1–5 and John Doe Corporations 1–5, Defendants.**

Civil Action No. 1:10cv249.

United States District Court,
N.D. Mississippi,
Eastern Division.

Nov. 10, 2011.

David S. Van Every, David S. Van Every, Columbus, MS, for Plaintiffs.

Benjamin M. Watson, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, Ridgeland, MS, Joshua S. Wise, Robert K. Upchurch, Holland Ray Upchurch & Hillen, Tupelo, MS, for Defendants.

### ORDER

MICHAEL P. MILLS, Chief Judge.

The court presently has before it motions to dismiss, to remand, and to compel arbitration in the above-entitled action. Having considered the memoranda and submissions of the parties, it is now prepared to rule.

On March 21, 2007, plaintiff Ellen S. Staples and her husband Rodney entered into a promissory note agreement in the amount of $143,000 with defendant Regions Bank. Plaintiff contends that she and her husband purchased credit life insurance in connection with the loan, but Regions disputes this characterization of the purchase. Regions contends that plaintiffs instead purchased an AmSouth Debt Protection Rider ("the Rider") which, by its terms, became part of the underlying promissory note agreement. Regardless, it is undisputed that Rodney died on December 14, 2008 from what an autopsy found to be "probable arrythmia secondary to severe coronary atherosclerosis," and Ellen thereupon sought coverage under the alleged credit life policy from Regions.

The Rider included a pre-existing condition exclusion, and Regions, acting through its contractor LotSolutions, Inc. ("LotS") undertook an investigation to determine whether it was applicable. In conducting this investigation, LotS obtained Rodney's medical records from his former providers, defendants Dr. Mark Shepherd and Endocrinology Consultants, PLLC. Plaintiffs provided a written au-

thorization for the disclosure of Rodney's medical records, but they contend that defendants exceeded the scope of this authorization in filling out a "questionnaire" regarding Rodney's death which had been submitted by LotS. Following its investigation, Regions determined that the pre-existing conditions exclusion was, in fact, applicable, and it accordingly denied plaintiffs' claim for benefits. Feeling aggrieved, plaintiffs filed the instant bad faith action in the Circuit Court of Lowndes County, and the case was timely removed to this court on the basis of federal question and diversity jurisdiction.

The court presently has before it motions to remand, to dismiss and to compel arbitration, and it will consider the jurisdictional issues raised by the motion to remand first. In opposing the motion to remand, defendants argue, and the court agrees, that both federal question and diversity jurisdiction exist in this case. As to the former, plaintiffs' complaint specifically sought "a sum to be determined by a jury or court for defendants' violation of common law and/or statutory violations of relevant state and **federal privacy laws** for responding to the questionnaire without authority." (Emphasis added). In the court's view, the fact that plaintiffs' complaint plainly sought recovery under "federal privacy laws" was sufficient to give rise to federal question jurisdiction in this case.

28 U.S.C. § 1331 provides district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether a case "aris[es] under" federal law within the meaning of § 1331, this court applies the well-pleaded complaint rule. *New Orleans & Gulf Coast Ry. Co. v. Barrois,* 533 F.3d 321, 328 (5th Cir.2008). Under the well-pleaded complaint rule:

[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The well-pleaded complaint rule focuses on whether the plaintiff has affirmatively alleged a federal claim, thus providing a basis for federal jurisdiction; anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction.

■ Based on the foregoing authority, the court concludes that the fact that plaintiffs sought actual recovery under "federal privacy laws" in their complaint is sufficient to give rise to federal question jurisdiction. In their motion to remand, plaintiffs seek to minimize this language, noting that "[t]he case law is clear that there is no private right of action under the [Health Insurance Portability and Accountability Act]." *See Acara v. Banks,* 470 F.3d 569, 572 (5th Cir.2006). Plaintiffs thus appear to belatedly recognize that they have no actual federal claims against the medical providers in this case, but this does not alter the fact that they asserted such a right to recovery in their complaint. As noted above, federal question jurisdiction is determined based upon the allegations of the complaint, and defendants were entitled to take plaintiffs at their word that they were seeking to establish a right to recover under federal law in this case. The court therefore concludes that

federal question jurisdiction exists, and the motion to remand is due to be denied.

■ Defendants also argue, and the court agrees, that diversity jurisdiction exists in this case based upon the fraudulent/improper joinder of the non-diverse medical provider defendants. The removing party, which is urging jurisdiction on the court, bears the burden of demonstrating that jurisdiction is proper due to fraudulent/improper joinder. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992). The Fifth Circuit has stated:

The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). The Fifth Circuit has reaffirmed that it "is insufficient that there be a mere theoretical possibility" of recovery; to the contrary, there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Travis v. Irby,* 326 F.3d 644, 648 (5th Cir.2003) (citing *Badon v. RJR Nabisco Inc.,* 236 F.3d 282, 286 (5th Cir.2000)).

In determining whether fraudulent/improper joinder exists, the Fifth Circuit made it clear in *Smallwood v. Illinois Central Railroad Co.,* 385 F.3d 568 (5th Cir.2004) that this court should apply a standard of review similar to the Rule 12 motion to dismiss standard, rather than the quasi-summary judgment standard of review that many district courts had ap-

plied pre-*Smallwood.* As it happens, the non-diverse defendants Dr. Shepherd and Endocrinology Consultants, PLLC have filed Rule 12 motions to dismiss in this case, and a similar analysis will thus apply to the substantive and jurisdictional issues as they relate to these defendants.

After considering the parties' briefing on this issue, the court agrees with defendants that the complaint alleges no viable claims against the medical providers in this case. In so concluding, the court reiterates that plaintiffs have already acknowledged that they have no viable federal claims in this case, and it is apparent that they do not have any valid state law claims either. Indeed, plaintiffs expressly forego any recovery under a medical malpractice theory, and, at any rate, they failed to comply with the procedural pre-requisites for such under Mississippi law. *See, e.g.* Miss Code Ann. § 15–1–36. This obviously limits the legal theories which plaintiffs might seek to assert against the medical providers in this case.

In their complaint and in their briefing, plaintiffs are very vague regarding exactly what "privacy" cause of action they might assert against the medical providers, and they may not simply rest upon vague assertions in opposing the motion to dismiss. It is, rather, incumbent upon them to point to a specific cause of action and to provide authority suggesting that the medical provider defendants might be held liable under such a cause of action in this case. The only specific cause of action asserted by plaintiffs in their brief is a tortious interference with contract theory which the court finds to be clearly inapplicable in this case. Plaintiffs argue in response to the motion to dismiss as follows:

> Moving defendant "Shepherd" had no authority to render any medical opinion or to answer any postmortem questionnaire to "Regions" or "LotS" concerning

a patient he had never treated or physically examined. By doing so, "Shepherd" and "ECP" violated Plaintiff's privacy rights and wrongfully interfered with an advantageous contract between Plaintiff's and "Regions"/"LotS." ... Plaintiff's Complaint has set forth a viable claim against moving defendants for the wrongful or malicious interference with a contract. Every person, firm or corporation has the common-law duty not to interfere with a person's contract with another. *Cranford v. Shelton,* 378 So.2d 652, 655 (Miss.1980). Further, the right of one to benefit from his contractual arrangements is a property right which shall be protected. *Protective Service Life Insurance Company v. Carter,* 445 So.2d 215, 219 (Miss.1983).

It is apparent, however, that simply citing black-letter law regarding the tortious interference with contract cause of action with no authority suggesting potential liability for such under the facts of this case is plainly insufficient to establish potential claims against the medical provider defendants.

█ In the court's view, there exist no set of facts under which plaintiffs might be able to prove that defendants committed the tort of tortious interference with contract by simply responding to questions which had been submitted to them in conjunction with an investigation of Rodney's medical history. Indeed, plaintiffs had explicitly authorized the release of Rodney's medical records in conjunction with the investigation, and, even assuming that the scope of that authorization was exceeded, this is a very far cry from establishing that the medical providers tortiously interfered with plaintiffs' contractual relations. In order to recover for a tortious/intentional interference with contract under Mississippi law, the plaintiff must establish that: (1) the acts were intentional and willful; (2)

they were calculated to cause damage to the plaintiffs in their lawful business; (3) they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted. *See, e.g. McBride Consulting Service, LLC v. Waste Management of Mississippi, Inc.,* 949 So.2d 52, 55–56 (Miss.App.2006).

In the court's view, there is no indication whatsoever in this case that the medical providers made medical disclosures "with the unlawful purpose of causing damage and loss, without right or justifiable cause" as required to support a tortious interference claim under Mississippi law. Indeed, Mississippi courts have frequently applied the defense of qualified privilege in tortious interference and defamation cases, and there is a well-established privilege to participate in investigations without fear of incurring civil liability. *See, e.g. Richard v. Supervalu, Inc.,* 974 So.2d 944, 950 (Miss.App.2008) (finding no potential liability for tortious interference or defamation in conjunction with an investigation of potential theft).

■ Plaintiffs have provided this court with no Mississippi case in which a tortious interference claim was upheld under facts which bear any resemblance to those here. Indeed, the Court of Appeals in *Supervalu* upheld the *dismissal* of such claims under a factual scenario bearing at least some resemblance to the one here. The court therefore agrees with defendants that no possibility of recovery exists against the medical provider defendants in this case for tortious interference with contract, and plaintiffs' vague assertions of violations of their "privacy" rights are clearly insufficient to establish a potential right to recover in this regard. It seems clear that these non-diverse defendants were improperly joined in order to defeat federal diver-

sity jurisdiction, and their motion to dismiss will be granted.

The court now turns to the motion to compel arbitration in this case. The promissory note's arbitration provisions require arbitration of any claim "in connection with or relating to ... (2) the performance, interpretation, negotiation, execution, ... administration, ... modification ... of this Note...." Importantly, the note provides that "any dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or this Note, will be decided by the arbitrator(s)." It is apparent that this provision in the note is a "gateway" arbitration provision which delegates to the *arbitrator* the question of whether the arbitration agreement as a whole is enforceable. The U.S. Supreme Court—as well as the Fifth Circuit—have enforced such gateway arbitration provisions, and they have limited a district court's inquiry to the specific issue of whether the *gateway provision itself* was procured by fraud or was otherwise unenforceable under the FAA. Under this authority, all other questions—including those relating to the unconscionability of the arbitration agreement as a whole, as well as the underlying agreement between the parties, are matters for the arbitrator to consider.

In *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court held that where—as here—the parties have contracted to arbitrate the issue or arbitrability, that issue is for the arbitrator, not a court. The Supreme Court reiterated this holding in the 2010 decision of *Rent–A–Center, West, Inc. v. Jackson,* —— U.S. ——, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), writing as follows:

The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . . This line of cases merely reflects the principle that arbitration is a matter of contract. . . . An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract," and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4. The question before us, then, is whether the delegation provision is valid under § 2.

*Rent–A–Center,* 130 S.Ct. at 2777 (citations omitted)

In *Allen v. Regions Bank,* 389 Fed. Appx. 441 (5th Cir.2010) the Fifth Circuit, applying *Jackson,* recently reversed a Mississippi district court for addressing the enforceability of a Regions Bank arbitration provision which, like the one in this case, included a gateway arbitration provision. In so ruling, the Fifth Circuit in *Allen* wrote that:

The Regions Agreement was clear: "Any dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)." The Allens accepted this agreement by continuing to use their deposit accounts with Regions and by signing signature cards. This was sufficient clarity to demand arbitration of arbitrability. . . . Any ambiguities regarding the scope of an arbitration clause are resolved in favor of coverage. . . . The arbitration agreement unmistakably commands that disputes as to its applicability are for the arbitrator. We conclude that the motion to compel arbitration should have been granted. The question the district court answered is for the arbitrator.

*Allen,* 389 Fed.Appx. at 446. The court notes that Regions' legal position in this case is even stronger than it was in *Allen* since the plaintiffs in this case agreed to gateway arbitration provisions in *two* separate contracts: the aforementioned promissory note and also in a general Regions Customer Agreement which, as in *Allen,* was executed between the customer and the bank. Indeed, the Fifth Circuit in *Allen* made it clear that a gateway arbitration provision in a general deposit account agreement with a bank could be used to compel arbitration regarding a dispute involving a subsequent loan agreement between the bank and the depositor.

The plaintiffs in this case thus find themselves having agreed to two separate gateway arbitration provisions which dictate that their arguments relating to the arbitration agreement as a whole are to be decided by an arbitrator. Plaintiffs have filed a lengthy opposition to the motion to compel arbitration, but it seems clear to this court that all of the arguments therein relate either to the enforceability of the debt protection rider as a whole or to the enforceability of the arbitration agreement as a whole. In their brief, plaintiffs summarize their arguments as follows:

1. Regions/LotS's Debt Protection rider arbitration agreement is void.

2. The McCarran–Ferguson Act reverse-pre-empts the application of the Federal Arbitration Act in the case at bar.

3. Regions/LotS and Shepherd/ECP have waived their right to arbitrate.

4. The high cost of arbitration prevents [plaintiffs] from pursuing their claim.

5. The arbitration agreement is [both procedurally and substantively] unconscionable.

6. The arbitration provision herein was procured by fraud.

6. *Burford* abstention doctrine should be invoked in this case.

None of these arguments relate to the extremely narrow issue which this court may consider, namely the enforceability of the two separate *gateway provisions* to which plaintiffs agreed. As such, *Allen* makes it clear that this court should not even address these arguments. The court notes that plaintiffs have filed a motion for "time to pursue limited discovery on the arbitration agreement herein and limited discovery on the issue of whether or not the 'Debt Protection Plan Rider' herein is an insurance product, subject to Mississippi Department of Insurance regulations." It is clear, however, that this request for discovery does not relate to the enforceability of the gateway arbitration provision, and the court will therefore dismiss this request for discovery without prejudice to it being raised before the arbitrator.

In light of the foregoing, it is ordered that:

1. Plaintiffs' motion to remand is denied;

2. Dr. Mark Shepherd and Endocrinology Consultants, PLLC's motion to dismiss is granted;

3. Regions' motion to compel arbitration is granted;

4. Plaintiffs' motion for discovery is denied, and this case is stayed pending the completion of arbitration.