**INTERNATIONAL BANCSHARES CORP.; d/b/a International Bank of Commerce, d/b/a IBC Bank**

v.

**Jose Antonio LOPEZ, On Behalf of Himself and All Others Similarly Situated.**

Civil Action No. 5:14–cv–138.

United States District Court, S.D. Texas, Laredo Division.

Signed Oct. 28, 2014.

Donna K. McElroy, Cox Smith Matthews Incorporated, San Antonio, TX, for International Bancshares Corporation, d/b/a International Bank of Commerce, d/b/a IBC Bank.

Michael Kevin Burke, The Law Offices of Michael M. Guerra, McAllen, TX, for Jose Antonio Lopez, on behalf of himself and all others similarly situated.

### MEMORANDUM & ORDER

GEORGE P. KAZEN, Senior District Judge.

Pending before the Court is International Bancshares Corporation's ("IBC") "Motion to Vacate Clause Construction Award" (Dkt. 1.). Jose Antonio Lopez ("Lopez") has responded (Dkt. 5), and IBC has filed a Motion for Leave to File a Reply (Dkt.

7). The Court now GRANTS IBC's Motion for Leave to File a Reply (Dkt. 7) and will consider the attached reply in its decision. The Court has also considered Lopez's Sur–Reply. (Dkt. 8.)

On September 4, 2013, Cesar Berlanga, a former IBC employee, filed a complaint alleging that IBC violated the Fair Labor Standards Act ("FLSA") by underpaying him and other sales associates for overtime work. (5:13–cv–149, Dkt. 1.) The Complaint requested that the suit proceed as a collective action to include "other similarly-situated sales associates." (*Id.*) On October 18, 2013, IBC filed a motion to compel arbitration. (5:13–cv–149, Dkt. 4.) Berlanga never responded to that motion, but while that motion was pending before the Court, Berlanga filed a notice indicating that Jose Antonio Lopez desired to opt-in to the action and that he agreed. (5:13–cv–149, Dkt. 6.) On November 26, 2013, this Court granted the motion to compel arbitration and dismissed the case. (5:13–cv–149, Dkt. 7.)

In arbitration, Lopez and Berlanga as co-claimants attempted to initiate "collective action arbitration" with the AAA.[1] (Dkt. 1–14 at p. 2.) IBC objected, alleging that this Court's Order granting the motion to compel arbitration mandated individual arbitration. (*Id.*) The AAA acquiesced to the objection and split Lopez and Berlanga into separate arbitrations. (Dkt. 1–14 at p. 2.) However, Lopez later moved for a threshold-clause construction that the arbitration agreement allows him to bring collective action arbitration under

---

1. In this matter, the parties dispute whether actions pursuant to. § 216(b) of the Fair Labor Standards Act, which allows actions "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated[,]" is a "class action" for the purposes of the Arbitration Policy. Courts interchangeably use the terms "class actions" and "collective actions" for matters under this provision of the FLSA. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir.2008) (referring to actions under the FLSA as both "class actions" and "collective actions"). For purposes of clarity, the Court will refer to group actions under the FLSA as "collective" and group actions pursuant to Federal Rule of Civil Procedure 23 as "class."

the FLSA. (*Id.*) On August 19, 2014, the Arbitrator entered a Clause Construction Award finding that Lopez could proceed with collective action arbitration. (*Id.* at p. 6.)

In its Motion to Vacate the Clause Construction Award, IBC argues that the Arbitrator exceeded his powers based on three theories: (1) the District Court already ruled on the issue; (2) the Arbitrator did not construe the agreement; (3) the Arbitrator violated the arbitration agreement. (Dkt. 1 at pp. 3–9.) Lopez first argues that the Court does not have jurisdiction to intervene, since the Award is not final, and further argues that even if the Court finds that it does have jurisdiction, the Arbitrator has the authority to determine whether the Policy allows for collective action and did not exceed this authority in issuing the award. (Dkt. 5 at p. 3.).

The Federal Arbitration Act sets forth four grounds pursuant to which vacation of an arbitration award may be appropriate: "(1) Where the award was procured by corruption, fraud, or undue means. (2) Where there was evident partiality or corruption in the arbitrators, or either of them. (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced. (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award on the subject matter submitted was not made." 9 U.S.C. § 10(a). The Supreme Court has held that this provision is the exclusive means to vacate an arbitration award under the FAA. *Hall Street Assocs., L.L.C. v. Mattel,* 552 U.S. 576, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008). IBC

makes all of its arguments pursuant to the fourth ground.

## I. The District Court's Jurisdiction

Lopez contends that this Court does not yet have jurisdiction to vacate this arbitration award, since it is not a final award. In 1995, the Fifth Circuit held that "[b]y its own terms, § 10 [of the FAA] authorizes court action only after a final award is made by the arbitrator." *Folse v. Richard Wolf Med. Instruments Corp.,* 56 F.3d 603, 605 (5th Cir.1995). However, in 2010, after the *Folse* decision, the Supreme Court held that an interlocutory appeal from an arbitral tribunal award is allowed in certain limited circumstances. *Stolt–Nielsen, S.A. v. Animal-Feeds Int'l Corp.,* 559 U.S. 662, 130 S.Ct. 1758, 1767 n. 2, 176 L.Ed.2d 605 (2010). It is not yet settled what circumstances allow for such an interlocutory appeal. Although the Fifth Circuit has noted that there is a circuit divide as to when federal courts may hear an interlocutory appeal from an arbitral tribunal, it has not yet expressed an opinion on the matter. *See Louisiana Health Service Indem. Co. v. DVA Renal Healthcare, Inc.,* 422 Fed. Appx. 313, 314 n. 1 (5th Cir.2011) (noting the divide but determining that "[b]ecause this order dismisses the appeal without a decision, we express no opinion as to whether jurisdiction would exist on the facts presented here.").

Neither party disputes that this clause construction award is not a final award. Rather, the question of this Court's jurisdiction turns on whether the limited circumstances of *Stolt–Nielsen* apply in this scenario. The plaintiff in *Stolt–Nielsen* filed an interlocutory appeal following a clause construction award on the availability of class arbitration. The arbitration panel had determined that the arbitration agreement in question did allow for Rule

23 class arbitration and issued an award that imposed class arbitration on the parties. *Stolt–Nielsen,* 130 S.Ct. at 1761. The parties in *Stolt–Nielsen* stipulated that they had not reached an agreement on class arbitration. The arbitrator determined that because of public policy concerns, class arbitration should go forward, despite the parties' stipulation that they had never reached an agreement on class arbitration. *Id.* at 1768. The Court determined that the interlocutory appeal was appropriate, in part because the party seeking to avoid class arbitration would be compelled to submit to class arbitration by arbitrators who had no authority to order them to do so. *Id.* at 1767 n. 2. The Court also determined that the party seeking to avoid class arbitration would be subject to hardship without the Court's review because their only alternative was to refuse to arbitrate. *Id.* The Supreme Court held that the arbitration panel exceeded its powers by imposing its own view of sound policy rather than interpreting the parties' agreement. The Court held that the arbitrator should have sought a "default rule" in the FAA or other relevant law as to whether an arbitration clause is construed as allowing class arbitration in the absence of express consent. *Id.* at 1768–69.

Notably, the *Stolt–Nielsen* decision addressed Rule 23 class actions, not collective actions under the FLSA. The question here, then, is whether there is any distinction between the two in determining whether an interlocutory appeal is appropriate. Lopez argues that collective actions and class actions are distinct, and that these differences mean that the limited circumstances of *Stolt–Nielsen* are inapplicable here. One notable procedural difference between *Stolt–Nielsen* and this case is that, in the instant case, the type of arbitration sought is a collective action pursuant to the FLSA, not a class action pursuant to Rule 23. Unlike Rule 23 class

actions, collective actions under the FLSA are "opt-in[,]" meaning that class members must opt into the suit in order to be bound by the judgment. In contrast, in Rule 23 actions, class members must opt out of the suit in order to not be bound by the judgment. *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916 (5th Cir.2008). Lopez also observes that the Policy applies to all employees of IBC, and so IBC would not be forced to arbitrate with anyone who had not agreed to arbitrate with them. However, the Court determines that this distinction is not significant enough to mean that the Court lacks jurisdiction in this case.

■ The Eleventh Circuit has addressed this exact issue, determining, albeit without much elaboration, that an order to arbitrate collectively pursuant to the FLSA was "squarely resolved by the Supreme Court" in *Stolt–Nielsen. DIRECTV, LLC v. Arndt,* 546 Fed.Appx. 836, 839 (11th Cir.2013). Although the decision in *DIRECTV* did not explicitly address potential differences between Rule 23 and FLSA class or collective actions, this Court agrees with the Eleventh Circuit that *Stolt–Nielsen* governs the Court's jurisdiction in this matter. Here, as in *Stolt–Nielsen,* if the Court were to decline to review the arbitration award at this point, the party seeking to avoid arbitration would be compelled to do so in a way that it contends the arbitrator has no authority to order it to do so. Although here the class will likely not encompass all potential plaintiffs, the party seeking to avoid arbitration will still have to undergo extra procedural steps to define the group of plaintiffs. IBC will have to go through the process of conditional certification, issuing notice, and potentially later move for decertification. While it is likely that IBC will not be forced to arbitrate collectively with parties with whom it does not have an

arbitration agreement, this does not wholly negate the hardship that the Supreme Court spoke of in allowing an interlocutory appeal in *Stolt–Nielsen.* IBC contends that the arbitration agreement does not authorize a collective proceeding, and it would face hardship in the event that it could not file an interlocutory appeal with this Court. *See Stolt–Nielsen,* 130 S.Ct. at 1767 n. 2. Arbitration is by consent, and a party should not be forced to arbitration by an arbitrator who might not have authority to order such arbitration. *See id.* Accordingly, although there are meaningful differences between Rule 23 class actions and FLSA collective actions, the limited circumstances justifying review for a Rule 23 class arbitration award are also applicable to FLSA collective actions. Nevertheless, as elaborated below, the Court will not vacate the arbitrator's decision in this instance.

## II. *The Court did not Decide this Issue in its November Memorandum*

▆ The Court first notes that, contrary to IBC's contention, the Court did not expressly compel the parties to individual arbitration in its Memorandum of November 26, 2013. (Civ. Case. No. 5:13–cv–149, Dkt. 7.) At that time, there was one pending opt-in Plaintiff, but the Court had not yet determined whether conditional class certification was appropriate. Indeed, the Plaintiff had not filed a motion for conditional certification of a class. Rather, in the November Memorandum, the Court determined that the applicable arbitration policy explicitly requires arbitration of claims brought under the FLSA. (*Id.* at p. 2.) The Court did cite a provision of the agreement that stated that class actions were not allowed without the agreement of all parties. (*Id.*) IBC alleges that citing such a provision constitutes an order to arbitrate claims individually. Quoting the clause at issue did not mean

that the Court ordered the parties to individual arbitration. When determining whether to order arbitration, courts must consider not only whether the parties have agreed to arbitrate, but also whether pertinent law renders any such agreement non-arbitrable. *Sherer v. Green Tree Serv.,* 548 F.3d 379, 381 (5th Cir.2008). As there has been some controversy over whether arbitration agreements may restrict collective proceedings under the FLSA, the Court had to ensure that any provision which could bar such an action did not make the agreement non-binding. *See Carter v. Countrywide Credit Industries, Inc.,* 362 F.3d 294, 298 (5th Cir.2004) (determining that prohibition against proceeding collectively under the FLSA did not render the arbitration agreement non-binding, since the "inability to proceed collectively" did not "deprive[ ] them of substantive rights available under the FLSA"). Nowhere in the memorandum did the Court determine that the provision actually did bar collective proceedings. Further, nothing in the Court's memorandum mandated individual arbitration or denied collective arbitration.

▆▆ In fact, the question of whether the agreement allowed collective or class arbitration was properly before the arbitrator. There is some debate over whether the decision for arbitration to proceed collectively or as a class is properly before the judge or the arbitrator. *See Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003) (in a nonbinding decision, a plurality of the Justices opined that such a question would be properly before the arbitrator.). However, parties to an arbitration agreement may agree to submit the arbitrability question itself to the arbitrator. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995). "[T]he issue of arbitrability is for

an arbitrator when the evidence clearly demonstrates that was the parties' agreement." *Allen v. Regions Bank*, 389 Fed. Appx. 441, 444 (5th Cir.2010) (citing *First Options of Chicago*, 115 S.Ct. at 1924). The Court's standard for reviewing the arbitrator's decision is the same standard courts apply when they review any other matter that parties have agreed to arbitrate. *First Options of Chicago*, 115 S.Ct. at 1926. In this case, the arbitration agreement contains a provision stating that "[t]he arbitrator(s) shall have the exclusive authority to determine the arbitrability of any dispute which the employee or the employer asserts is subject to" the Policy. (Dkt. 1–3 at p. 9.) The Fifth Circuit has found that a similar delegation provision "clearly and unmistakably" called for the arbitrator to decide arbitrability issues. *Allen*, 389 Fed.Appx. at 446 (delegation clause stated that "any dispute regarding whether a particular controversy is subject to arbitration ... shall be decided by the arbitrator(s)"). Accordingly, it is clear that this agreement reserved questions of arbitrability for the arbitrator.[2]

### III. *The Arbitrator Did Not Exceed His Authority by Failing to Interpret the Policy*

 The Court further finds that the arbitrator did not exceed his authority so as to warrant vacating the arbitration award. "Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans, LLC v. Sutter*, —— U.S. ——, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013)

(internal citations omitted). IBC seeks to set aside this award on the grounds that the arbitrator exceeded his powers. (Dkt. 1 at p. 3.) *See* 9 U.S.C. § 10(a)(4). Under this provision, "[i]t is not enough ... to show that the [arbitrator] committed an error—or even a serious error." *Stolt–Nielsen*, 130 S.Ct. at 1767. The Court may vacate the award "[o]nly if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Oxford*, 133 S.Ct. at 2068 (internal citations and quotations omitted). Rather, "the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* Here, IBC argues that the arbitrator did not interpret the Policy, since he did not analyze or reference any language from the Policy or cite to or reference any law on which he bases his decision. (Dkt. 1 at p. 6.)

The Court disagrees with IBC's assertion that the Arbitrator's award did not interpret the Policy. In the Award, the Arbitrator initially noted that the agreement covered all employment-related disputes, a premise that neither party disputes. (*See* Dkt. 1–14 at p. 1.) The Arbitrator later examined the clause in question, which barred class arbitration without IBC's consent. (*Id.* at p. 4.) The Arbitrator then went on to determine that the arbitration agreement explicitly incorporated the AAA Employment Rules as part of the Agreement.

---

**2.** Even if the parties did not agree to arbitrate, it appears Fifth Circuit authority holds that that "arbitrators are supposed to decide whether an arbitration agreement forbids or allows class arbitration." *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355, 359 (5th Cir. 2003) (relying on plurality in *Green Tree v.*

*Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003)). *See also Gonzales v. Brand Energy & Infrastructure Services, Inc.*, 2013 WL 1188136, at *4 (S.D.Tex. March 20, 2013) (applying *Pedcor* standard to an FLSA collective action case). *But see Stolt–Nielsen*, 130 S.Ct. at 1771 (emphasizing that *Bazzle* is non-binding precedent).

(*Id.* at p. 5.) Having determined that the Agreement incorporated these rules, the Arbitrator then observed that the Employment Rules specifically distinguish between collective actions and class actions. The Arbitrator concluded that since the agreement explicitly barred only class actions, not collective actions, IBC's consent was only required for class actions, not collective actions. In short, the arbitrator determined that the Agreement, which explicitly covered "[c]laims regarding wages or other compensation due under the Fair Labor Standards Act" but required consent for "class actions" did not require consent for collective actions under the FLSA. (*See* Dkt. 1–3 at pp. 1, 2, 3.) In *Oxford*, the Supreme Court found such a textual exegesis of an arbitration agreement was sufficient to satisfy the standard of review. *Oxford*, 133 S.Ct. at 2069. *See also id.* at 2067 ("Accordingly, [the arbitrator] concluded that 'on its face, the arbitration clause ... expresses the parties' intent that class arbitration can be maintained" since the clause authorized arbitration for all forms of civil action.). The Court cannot say that the Arbitrator entirely failed to interpret the agreement in this situation.

IV. *The Arbitrator Did Not Exceed His Authority by Failing to Decide the Dispute "in Accordance with Governing Principles of Law and Equity"*

 IBC finally contends that the arbitrator exceeded the authority provided to him by the policy since the Policy required the arbitrator to decide all disputes in accordance with governing principles of law and equity. (Dkt. 1–3 at p. 9.) IBC argues that the arbitrator did not do so, since he did not reference or analyze any law on which he relied. (Dkt. 1 at pp. 8–9.) IBC further argues that the arbitrator did not follow *Stolt–Nielsen* as governing law, therefore he did not decide the dispute in accordance with governing principles of law, and so he exceeded his authority. Accordingly, IBC argues that the arbitrator's award should be vacated, since issuing an award without an interpretation of law exceeds his power as arbitrator.

In order to overturn the Arbitrator's decision, the Court would have to determine that the Arbitrator "had abandoned [his] interpretive role." *Oxford*, 133 S.Ct. at 2070. "[C]onvincing a court of an arbitrator's error—even his grave error—is not enough. So long as the arbitrator was 'arguably construing' the contract ... a court may not correct his mistakes under § 10(a)(4)." *Id.* IBC's argument that the arbitrator failed to follow *Stolt–Nielsen* as governing law is essentially a claim that the arbitrator did not correctly interpret the contract. Error in contract interpretation is not sufficient to justify vacating an arbitration award. *See id.* It cannot be said that the arbitrator "abandoned [his] interpretive role" because he did not explicitly rely on a case that one party cites as being pertinent to the decision.[3]

Further, the Court cannot say that the arbitrator did not apply *Stolt–Nielsen* as

---

**3.** In its Response, IBC also argues that the arbitrator should not have used the AAA's rules to help determine that class actions and collective actions are different, since the Supplemental Rules for Class Actions provides that "the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." (Dkt. 7–2 at p. 4 (citing Rule 3 of the Supplemental Rules for Class Actions)). However, the Policy incorporated the Rules as part of the Agreement, which neither party disputes. Accordingly, the Court will not hold that the arbitrator abandoned his interpretive role when he considered the incorporation of the Supplementary Rules as part of his decision.

governing law. As noted above, *Stolt–Nielsen* addressed an unusual circumstance where the parties stipulated that they had reached no agreement on class action. In this case, the arbitrator determined that the Agreement requires arbitration of "all employment-related disputes[,]" and only requires special consent for class actions, not collective actions. (Dkt. 1–14 at pp. 1, 5.) The arbitrator determined that an action pursuant to the FLSA is an employment-related dispute and that since collective actions are distinct from class actions under the AAA Employment Rules, IBC's consent was not required. The arbitrator did determine that IBC had given consent—by entering into an arbitration agreement intended to cover "all employment-related disputes" and then by not providing an exception for FLSA collective actions. *See, e.g., Stolt–Nielsen,* 130 S.Ct. at 1776 ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."). Therefore, the arbitrator did not abandon his interpretive role in applying guiding principles of law and equity in rendering his decision.

Moreover, to the extent that IBC contends Arbitrator's decision was incorrect for failing to cite law, it is meritless, as the citation of law does not appear to be strictly necessary when an arbitrator interprets an arbitration agreement. *See Oxford,* 133 S.Ct. at 2069 (upholding arbitrator's decision where it was " 'concerned solely with the parties' intent as evidenced by the words of the arbitration clause itself' "). *See also Stolt–Nielsen,* 130 S.Ct. at 1770 (holding unless the "stipulation left no room for an inquiry regarding the parties' intent" the arbitrator should have attempted to ascertain whether a federal or state law established a default rule). The law governing arbitration agreements is contract law, and IBC does not appear to cite any violations of governing principles of contract law. IBC merely takes issue with the Arbitrator's failure to cite such law. The Court will not vacate the arbitration award for failure to cite law.

In conclusion, the Court concludes that, although it has jurisdiction to hear this interlocutory appeal under *Stolt–Nielsen,* the movant has not met its high burden of demonstrating that the Court should vacate the arbitration award. Accordingly, IBC's Motion to Vacate Clause Construction Award (Dkt. 1) is DENIED.