COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
| --- | --- | --- |
| MARIA G. GUILLEN-CHAVEZ, | § | No. 08-17-00046-CV |
| Appellant, | § | Appeal from the |
| v. | § | 327th District Court |
| READYONE INDUSTRIES, INC., | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2011-DCV-00615) |
|  | § |  |

**O P I N I O N**

In this appeal, Maria Guillen-Chavez asserts that the trial court erred by entering a judgment confirming an arbitrator's award where the arbitrator was allegedly not selected pursuant to the terms of a purported agreement between her and her employer, ReadyOne Industries. Specifically, Guillen-Chavez maintains that counsel for ReadyOne consented on the record at a hearing to using a local El Paso County arbitrator to resolve a non-subscriber negligence dispute, thereby creating a Rule 11 agreement on the issue. However, the trial court eventually appointed an out-of-town arbitrator after the parties could not agree on a mutually acceptable local arbitrator.

Guillen-Chavez asks this Court to vacate the arbitrator's award and remand to the trial court with instructions to appoint a local arbitrator. We will grant this requested relief.

**BACKGROUND**

This is not the Court's first time wading into this now more than nearly seven-year-long arbitration fight.[1] At this stage of litigation, the parties essentially agree that a motion to compel arbitration exists; the dispute now is over who can arbitrate this claim.

By way of background, ReadyOne contends that Guillen-Chavez signed an agreement to arbitrate claims against the company. The ReadyOne arbitration agreement has an English language version and a Spanish language version. Guillen-Chavez allegedly signed the Spanish version. The arbitrator identity issue in this case arises because there is a discrepancy between the English and Spanish language versions of the arbitration agreement. The English version referred arbitration to Judicial Workplace Arbitration, Inc., whereas the Spanish version that bears Guillen-Chavez's purported signature stated that arbitration would be handled by the non-existent firm Judicial Workforce Arbitration, Inc.

At a May 10, 2013, hearing, the trial court stated that it would grant the motion to compel arbitration, and ReadyOne stated it would submit a proposed order naming "JWA" as the arbitrator. Guillen-Chavez refused to approve the proposed order as to substance and form, leading ReadyOne to file a motion for entry of order. At the entry of order hearing, Guillen-Chavez contended that the Spanish language arbitration agreement required arbitration before an entity that did not exist, and she argued that entering an order naming an out-of-town arbitrator would be unjust. The following colloquy ensued in open court, with the portions that Guillen-Chavez maintains show a mutual agreement vis-à-vis arbitrator selection bolded and italicized:

MR. ACOSTA: This Court has held us to what the actual language of the agreement says. Judicial Workforce Arbitrators, Inc. it doesn't exist. So we've agreed to arbitrate [with] an entity that doesn't exist.

---

[1] *ReadyOne Indus., Inc. v. Guillen-Chavez*, 394 S.W.3d 724 (Tex.App.—El Paso 2012, no pet.)(dismissing attempted interlocutory appeal of trial court's discovery order ancillary to pending motion to compel arbitration); *In re ReadyOne Indus., Inc.*, 394 S.W.3d 680 (Tex.App.—El Paso 2012, orig. proceeding)(conditionally granting mandamus relief vacating discovery orders).

So as far as any fairness or equitable concerns that we have, I don't think they can force us to arbitrate a place out of town that we don't feel we ever agreed to. And they don't even have the correct entity on the order. What we propose, Judge, and I think what was allowed under the rules is the Court uses discretion and appoints an arbitrator locally here in town who will if the Court is compelling us to arbitrate that we both can agree to. I don't think it's fair that we should be allowed to arbitrate from out of town firm that we never agreed to. The Defense is trying to shove down our throat and put it on [the] order. We've never even heard or seen this thing before. So we'd ask the Court to exercise its discretion in appointing a local arbitrator to do the arbitration if that's what the Court is seeking us to do.

THE COURT: Mr. Hughes.

MR. HUGHES: Yeah, I would suspect that maybe this entity changed it's name. I'm not for sure. ***Your Honor, we would agree to go with a local arbitrator***. And I say this with reluctance because we had another case where we went before a local arbitrator, finished the arbitration and then we had trouble getting the agreement or the arbitrator's award enforce[d] because the local arbitrator had disclosed every case they had done with the different firms even though the Scherr Legate Firm was involved in some of those other cases. So we've always been a little reluctant. Reluctantly in two respects because we like using local arbitrators. We like keeping things in town.

On the other hand, if there's going to be something that's going to -- we go through arbitration and suddenly it doesn't stick, we don't like to leave that sitting around. ***But in this case we will agree on both of those to use [a] local entity if we can agree to you know say to a local arbitration if that's okay with you guys.***

MR. ISAAC: ***That's fine, Judge. I mean I guess the process to them there's a proposal of different arbitrators name. If we can't agree, the Court appoint[s] one based off our selection.***

THE COURT: How many arbitrators do we have, two?

MR. HUGHES: ***Yeah, there's -- yeah, there's three or four I guess. It's pretty straight forward, yes, Your Honor.***

THE COURT: Okay. And how many speak Spanish? One probably. Right?

3

MR. ACOSTA:        That would be a concern of ours also.

THE COURT:        Yeah, I mean --

MR. HUGHES:        I didn't think about it. Although I guess we can have a translator.

THE COURT:        Yeah, it's always better though to -- so I think let's try and get someone that's speaking Spanish and then keep it local.

MR. ACOSTA:        Yes, Your Honor.

THE COURT:        So let's make that adjustment Mr. Hughes on this.

MR. HUGHES:        *Okay. We'll do that, Your Honor.*

THE COURT:        And if there's nothing further, then we're adjourned. [Emphasis added].

The trial court then issued an order compelling arbitration that stated, in relevant part:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that all of Plaintiff's claims and causes of action against Defendant herein are referred to an arbitrator from El Paso County, Texas for binding arbitration.

Following the issuance of this order, Guillen-Chavez and ReadyOne could not agree on a mutually acceptable local arbitrator. ReadyOne filed a second motion to enforce the arbitration agreement. At the hearing, a different lawyer than the one from the previous hearing argued for ReadyOne. Counsel for ReadyOne informed the trial court that the parties could not agree on a mutually acceptable arbitrator and as such the trial court should appoint "JWA" based in Kerrville as arbitrator, pursuant to the terms of the original arbitration agreement and pursuant to Paragraph 13 of the arbitration agreement, which stated that in the event of a discrepancy between the English and Spanish language versions, the English version would control. Guillen-Chavez countered that prior counsel had agreed on the record to using an El Paso County arbitrator. The trial court later issued a modified order compelling arbitration with Walker Crowson, an arbitrator located in El

4

Paso County. However, Crowson later voluntarily withdrew as arbitrator, and the parties were again unable to agree to a mutually acceptable arbitrator.

Following the withdrawal, the trial court held another hearing regarding the appointment of an arbitrator. Guillen-Chavez again argued that ReadyOne's prior counsel had made a binding Rule 11 agreement on the record to use a local arbitrator, and ReadyOne again asked the court to appoint JWA as the arbitrator. The trial court suggested the parties arbitrate before Steve Ables, who was "not exactly local, but he is our Regional Presiding Judge." Guillen-Chavez objected that Ables was not local, that he was a member of JWA, and that she does not consent to him serving as arbitrator. The trial court then entered an order naming Judicial Workplace Arbitrations as the arbitrator with a presiding arbitrator "to be selected pursuant to their selection process." The parties ultimately arbitrated before arbitrator Charles W. Seymore from Sugar Land, Texas. He was selected pursuant to JWA's selection process.

After the arbitrator issued his ruling, ReadyOne filed a motion to confirm the arbitration award, which Guillen-Chavez opposed. In support of her position, Guillen-Chavez argued, among other things, that the arbitrator lacked jurisdiction over the suit because he was not selected pursuant to the parties' agreement that any arbitrator would be based out of El Paso County.

The trial court entered judgment confirming the arbitration award and denying the request to vacate the award. This appeal from Guillen-Chavez followed.

## DISCUSSION

In her sole issue on appeal, Guillen-Chavez maintains that the trial court erred by confirming the arbitration award because she and ReadyOne entered into a Rule 11 agreement in open court to use an arbitrator from El Paso County, but the trial court appointed an out-of-town arbitration firm in violation of that Rule 11 agreement.

5

ReadyOne advances three arguments in favor of confirming the arbitration award. First, to the extent that ReadyOne's prior counsel's comments constituted a Rule 11 agreement to use a local arbitrator, the agreement was conditioned on both parties agreeing to a mutually acceptable arbitrator, which did not happen. Second, the trial court could have ordered arbitration before JWA because the naming of "Judicial Workforce Arbitration, Inc." as the arbitrator in the Spanish language agreement was an obvious misnomer, and the terms of the arbitration agreement in both versions stated the English version would control. Third, even if the purported misnomer resulted in Guillen-Chavez and ReadyOne failing to meet minds as to the arbitrator's identity, they still met minds as to submitting the matter to arbitration, meaning that the trial court had the residual authority under 9 U.S.C.A. § 5 to name JWA as arbitrator based on the breakdown in naming an arbitrator.

### *Standard of Review*

We review a trial court's decision to confirm an arbitral award under the Federal Arbitration Act de novo. *Garza/Phelps Dodge Refining Corp. v. Phelps Dodge Refining Corp./Garza*, 262 S.W.3d 514, 517 (Tex.App.—El Paso 2008, no pet.). We indulge every reasonable inference to uphold the arbitration award. *Id*. Our review of the award is "extraordinarily narrow" and does not encompass the decision on the merits. *Id*. at 517.

As required by the FAA, a court must grant an order confirming an arbitral award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. 9 U.S.C.A. § 9. A court may vacate an arbitral award under four circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

6

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(a).

This case involves the allegation that arbitration award should be vacated because the arbitrator exceeded his power because he was not duly appointed according to the terms of a Rule 11 agreement. Arbitrators exceed their powers for purposes of Section 10(a)(4) when they decide matters not properly before them, including when an arbitration clause does not give the arbitrator authority to reach an issue. *Ancor Holdings, L.L.C. v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex.App.—Dallas 2009, no pet.). Arbitrators derive their power solely from the parties' agreement to submit to arbitration, and they must be selected pursuant to the method specified in the parties' agreement. *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21 (Tex. 2014). "An arbitration panel selected contrary to the contract-specified method lacks jurisdiction over the dispute." *Id.* "Accordingly, courts do not hesitate to vacate an award when an arbitrator is not selected according to the contract-specified method." *Id.* [Internal quotation marks omitted].

### *Existence of a Rule 11 Agreement*

Although this case had its genesis in an arbitrator identity disparity between English and Spanish versions of the arbitration agreement (Judicial *Workplace* Arbitration, Inc. versus Judicial *Workforce* Arbitration, Inc.), we must first deal with the threshold issue of whether the written arbitration agreement was modified by a Rule 11 agreement made in open court. If the parties made a Rule 11 agreement as to the identity of an arbitrator during the motion to compel hearing, the Rule 11 agreement naming an arbitrator or the proper arbitrator selection method would

7

supersede the written arbitration agreement containing the purported misnomer. *Cf. Whataburger Rests., L.L.C. v. Cardwell*, 446 S.W.3d 897, 912 (Tex.App.—El Paso 2014), *rev'd on other grounds,* 484 S.W.3d 426 (Tex. 2016)(on-the-record agreement to arbitrate in El Paso was enforceable under Rule 11 notwithstanding a forum-selection clause in the written arbitration agreement to the contrary).

## Waiver

ReadyOne attacks reliance on the purported Rule 11 agreement on both substantive and procedural grounds. We address ReadyOne's procedural objection first. ReadyOne contends that notwithstanding the validity of any purported Rule 11 agreement precluding the appointment of JWA, Guillen-Chavez waived any objection to the arbitrator by failing to renew her objection to the arbitrator's authority before the arbitrator himself. *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673-74 (5th Cir. 2002)(objections to constitution of arbitration panel must be stated at beginning of arbitration). Thus, even if a valid Rule 11 agreement formed on the terms that Guillen-Chavez advances in this Court and in the court below, her failure to repeat this specific point before the arbitrator waived her ability to rely on the Rule 11 agreement on appeal in this Court.

In the first place, we observe that Guillen-Chavez did object at length to the seating of the arbitrator based on the fact that he was not from El Paso. ReadyOne urges us to look deeper into Guillen-Chavez's objection and hold that the argument was not preserved because her argument that the arbitrator is "not from El Paso" was based not on the assertion of a contractual right to have an El Paso arbitrator, but on her perception that the arbitrator could not be fair due to a lack of political and cultural understanding of the El Paso's unique cross-border environment. This distinction walks a razor's edge. Indeed, it is hard to determine whether the arguments raised when Guillen-Chavez objected to the arbitrator being from outside of El Paso were separate from her

8

contractual right-to-a-local-arbitrator argument, or whether those concerns merely informed an objection on contractual grounds to the arbitrator being from out-of-town.

Apart from this record ambiguity, we also find ReadyOne's preservation argument difficult to square with the reality that the contested issue of arbitrator identity was extensively and heavily litigated for months in district court. Guillen-Chavez's objection to a non-El Paso arbitrator was repeated at several pre-arbitration hearings. While ReadyOne cites *Brook* as authority showing that an objection to an arbitrator's identity is waived if the objection is not made before the arbitrator himself, *Brook* is distinguishable from this case precisely because in this case there was pre-arbitration litigation in district court. In *Brook*, it was the employee, not the employer, demanding arbitration. *Brook*, 294 F.3d at 670. The employer agreed to arbitrate and proceedings bypassed the district court entirely until it came time to confirm the arbitral award, at which point the employee who originally demanded arbitration resisted entry of judgment. *Id*. at 670-72. The Fifth Circuit did hold that the employee was required to object to the defects in the arbitrator appointment process before the arbitrator. *Id*. at 673-74. However, in holding that an objection to the constitution of the arbitration panel was a prerequisite to raising the argument in a confirmation/vacatur proceeding, the Fifth Circuit also noted that "[a]lternatively, before proceeding to arbitration, Brook could have sought an order from the district court compelling arbitration before a properly selected arbitrator . . . [b]ut Brook did not timely go to court," nor did he object in district court proceedings until after he was "prompted by the federal magistrate judge long after the arbitration had run its course." *Id*. Thus, *Brook* deals with the issue of whether an objection to arbitrator is necessary *in the absence* of pre-arbitration district court proceedings compelling arbitration during which a party could raise a formal objection to the arbitrator. Likewise, another recent Fifth Circuit case ReadyOne cited in supplemental briefing also dealt

9

with preservation in the context of arbitral confirmation proceedings in which the parties bypassed the district court completely and chose to arbitrate voluntarily. *Light-Age, Inc. v. Ashcroft-Smith*, 922 F.3d 320, 322-23 (5th Cir. 2019)(citing *Brook*).

This case is distinct from *Brook* and *Light-Age* because those cases involved consent and bypass of the district court while this case involved direct judicial intervention and pre-arbitration district court litigation. Because arbitration in this case took place under compulsion at the conclusion of district court proceedings, and because Guillen-Chavez raised this issue multiple times during district court proceedings, we find that the objection to the out-of-town arbitrator was preserved, and we may reach this issue.

### Merits

We turn to the merits of the purported Rule 11 agreement. Guillen-Chavez asserts that the stipulations counsel made with respect to using a local arbitrator during the first motion to compel hearing constitute a binding and enforceable Rule 11 agreement. ReadyOne does not directly deny that stand-in counsel agreed to arbitrate using a local arbitrator under circumstances that would suggest the promise was enforceable as a Rule 11 agreement. Instead, ReadyOne's main point of contention is that any agreement was conditioned on both parties agreeing to an acceptable El Paso County arbitrator. Since the parties could not agree on an acceptable compromise arbitrator, the Rule 11 agreement did not control the selection process, meaning the trial judge could either resort back to the written agreement or else exercise her Section 5 discretion to break the impasse and appoint an arbitrator herself.

"Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or *unless it be made in open court and entered of record*." [Emphasis added].

10

TEX.R.CIV.P. 11  An agreement made in open court to alter the terms of a written arbitration agreement is enforceable under Rule 11. *See Whataburger Rests., L.L.C.*, 446 S.W.3d at 912 (oral agreement made on the record superseded terms of written arbitration agreement).  Contract law governs Rule 11 agreements made in open court. *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex.App.—Houston [1st Dist.] 2014, no pet.).

ReadyOne's defensive arguments shift our focus away from the essentially uncontested issue of whether a Rule 11 agreement formed and toward the issue of what the terms of the Rule 11 agreement required.  Because the Rule 11 agreement was oral and not written, we must look to the hearing transcript to determine the precise contours of the agreement.  ReadyOne points to comments stand-in counsel made during the hearing about reluctance and concern about picking the right arbitrator to show that all parties understood that any Rule 11 agreement between the parties was limited in scope and conditioned on both parties' mutual assent to an arbitrator.  Since the parties could not agree on a local arbitrator under the terms of the Rule 11 agreement, the trial court properly exercised its discretion to appoint an arbitrator under 9 U.S.C.A. § 5.

We would agree with ReadyOne's logic if the record suggested that the Rule 11 agreement was indeed conditional.  But we disagree with ReadyOne's interpretation of the transcript as evincing an agreement to use a local arbitrator if and only if both parties mutually agreed on identity.  Though stand-in counsel did voice reluctance to the trial court, and though it took some back and forth between the parties and the trial court to parse through different concerns, the record shows that everyone in the courtroom apparently ended the hearing on the same page.  Counsel for ReadyOne agreed to "use local entity" if Guillen-Chavez would agree to "a local arbitration." Guillen-Chavez's counsel said "[t]hat's fine" and stated that "the process" would involve "a proposal of different arbitrators name[s]. If we can't agree, the Court appoint[s] one based off our

11

selection." The Court asked counsel for ReadyOne for an estimate of how many available arbitrators could hear this case. Counsel for ReadyOne stated that he believed three or four arbitrators would be available and that he understood the process to be "straight forward." Then, following discussions about whether a Spanish-speaking arbitrator should be used, the trial court asked counsel for ReadyOne to "make that adjustment," and counsel responded, "Okay. We'll do that, Your Honor." The hearing then adjourned.

As we interpret the transcript, we find that the parties agreed to use an El Paso County arbitrator, preferably one that spoke Spanish if possible, and if the parties could not agree on which arbitrator to use, the trial court would select from a set of El Paso County arbitrators proposed by the parties. That agreement met the strictures of Rule 11 enforceability and thereby modified the terms of the original arbitration agreement on the issue of arbitrator identity.

The fact that the parties were ultimately not able to agree on a mutually acceptable local arbitrator was insufficient to justify the exercise of the Section 5 appointment power because the arbitrator selection process specified by the terms of the Rule 11 agreement had not yet been exhausted. 9 U.S.C.A. § 5 states: "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed . . . ." Here, the Rule 11 agreement provided that if the parties could not agree on the identity of a mutually acceptable local arbitrator, the trial court would select a local arbitrator from a list of names submitted by the parties. Because the agreement specified the method for selecting an arbitrator, the trial court was required to first use that method in appointing an arbitrator. *Id.* Only if an arbitrator could still not be appointed once the selection process agreed to by the parties was exhausted would the trial court then have the ability to invoke Section 5 and appoint an arbitrator *sua sponte*.

Since the arbitrator was not selected from a pool of local arbitrators suggested by both

sides, the arbitrator in this case did not have the authority to render an award. Guillen-Chavez's appellate point is meritorious.

## CONCLUSION

Issue One is sustained. We reverse the trial court's judgment confirming the arbitration award and remand for further proceedings.

June 12, 2019                      YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.
McClure, C.J., Not Participating

13